PEORIA, D. & E. RY. CO. v. CENTRAL TRUST CO. OF NEW YORK et al.

CENTRAL TRUST CO. OF NEW YORK et al. v. PEORIA,
D. & E. RY. CO. et al.

(Circuit Court, S. D. Illinois. December 15, 1897.)

RAILROADS—RIGHTS OF SECOND MORTGAGEES.

　　Where the operation of a railroad by a receiver has demonstrated the capacity of the property to earn more than its operating expenses and the interest on its first mortgage, and the receiver has in his hands sufficient money to pay the delinquent interest on such mortgage, the holders of a second mortgage are entitled to have it so applied, although a suit to foreclose for the default has been instituted; there being no right, under the bill filed, to foreclose for anything except the interest due.

Bill by the Peoria, Decatur & Evansville Railway Company against the Central Trust Company of New York and William A. Heilman, trustees, and cross bill by defendants against the complainant. Heard on motion for an order directing the receiver to pay interest.

Samuel P. Wheeler and Alexander Gilchrist, for William A. Heilman.

Green & Humphrey, for reorganization committee.

ALLEN, District Judge. The Peoria, Decatur & Evansville Railway Company filed a bill in this court, and E. O. Hopkins and E. P. Houston were appointed receivers of the railway. Later on, Receiver Houston resigned, and Hopkins continued as sole receiver. Subsequently the Central Trust Company of New York and William

A. Heilman, trustees, after answering the bill, filed a cross bill praying a foreclosure of a second mortgage upon the whole line, and a decree of foreclosure has been passed. There are two divisions of the Peoria, Decatur & Evansville Railway,—one extending from Peoria to Mattoon, and the other from Mattoon to Evansville; and each division is covered by a divisional mortgage, and each of these mortgages is a first lien upon the respective divisions. The interest upon the bonds secured by the Peoria Division mortgage fell due July 1, 1897; and on the 6th of July, 1897, a bill was filed in this court by the Central Trust Company, sole trustee, praying a foreclosure of the Peoria Division mortgage. A petition has now been filed by William A. Heilman, one of the trustees of the second mortgage, asking that an order be entered authorizing the receiver to pay the interest which fell due July 1, 1897, under the Peoria Division mortgage. The co-trustee does not join in this petition, for the reason that it is also trustee under the divisional mortgage, and by its counsel, in open court, has declined to take a position that may be construed as partial to the one side or the other. In this regard the action of the Central Trust Company is proper and commendable. The only opposition to the order asked for comes from the reorganization committee of the first mortgage bondholders, representing the parties to whom it is proposed to pay the money. Unless, therefore, the first mortgage bondholders will in some way be injured by passing the order asked for, it ought to be made. The subordinate lienholders ought to have a fair opportunity to protect, and ultimately save, whatever equity there may be in the property, and it is set up in the petition that the Peoria Division is worth a considerable sum above the first lien. It is contended, however, that this division is scant security for the first mortgage debt. The facts do not, in my judgment, sustain this view. It appears very clearly that at the institution of the receivership the physical condition of the property was very bad, and there then existed $155,000 of preferential debts; that under the receivership the property has been brought up to a fair standard of excellence; that over 67 miles of ballast has been placed, large renewals of cross-ties made, and the property largely enhanced in value. It also appears that during the past year, alone, upward of $85,000 has been expended, outside of the ordinary operating expenses, in the permanent betterment of the property. Since the institution of the receivership the large preferential debt then existing has been substantially paid off by the receiver. The receiver has also paid the interest on the first mortgage bonds of both divisions for more than three years. And all these things have been accomplished solely through the earnings of the property. I regard it as clearly established that the security of the first mortgage bondholders is far better than when the receiver took charge. Again, it appears that the Peoria Division is now earning, and in fact has earned right along, more than its operating expenses and the interest on the first mortgage bonds. The receiver, according to his reports, has the funds in hand to pay the interest on the Peoria Division first mortgage bonds, and there seems no valid reason why he should not do so. It is urged that the receiver's current bills

may become a lien upon the property superior to the first mortgage. I am unable to see the force of this objection. The holders of the first mortgage bonds, if the order asked for is made, will receive this money. If not made, the same money will be applied to the other purpose, of paying a debt that may become a lien superior to the first mortgage. Suppose this should be the result; their condition will be no worse than it now is. There are considerations of duty to the second lienholders that forbid any speculation of this sort. The property is earning a surplus over its operating expenses and this interest. I feel justified in dealing with this question in the light of past and present experience, and feel justified in assuming that no loss can be sustained by the first mortgage bondholders if the order petitioned for is made. It is the policy of courts of equity to stimulate the best possible returns from property being administered or sold under decree, to the end that all creditors and lienholders may, if possible, be paid. There is another reason why the first mortgage bondholders of the Peoria Division cannot be prejudiced by paying them this interest: Under the bill filed, no decree can be entered, except for the interest due. The principal of the debt cannot be declared due for default in payment of interest. The views I have expressed are largely sustained in Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10; Lloyd v. Railroad Co., 65 Fed. 351; American Loan & Trust Co. v. Union Depot Co., 80 Fed. 36. An order may be entered directing the receiver to pay the interest which fell due July 1st last on bonds of Peoria Division.