In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1017

HSBC BANK USA, N.A.,
as Trustee for Nomura Home Equity Loan, Inc.,
Asset-Backed Certificates, Series 2006-FM1,

*Plaintiff-Appellee,*

*v.*

KIRKLAND TOWNSEND,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 3921 — **Gary S. Feinerman**, *Judge.*

ARGUED NOVEMBER 3, 2014 — DECIDED JULY 16, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. This is one of the flood of mortgage
foreclosure cases that hit the country after the 2008 economic
downturn. Before we can say anything about its merits,
however, we must decide whether an appealable final judg-
ment is before us. That question turns out to be more com-

plicated than usual, given the many steps that must take place before the foreclosure process is complete. Here, the case has reached the point where the bank seeking to foreclose has secured a judgment of foreclosure and an order of sale pursuant to Illinois law. The district court declared that its judgment was "final," but at the same time, it acknowledged that the public judicial sale could take place only after certain additional steps were completed, including the expiration of the statutory reinstatement and redemption periods to which the mortgagor was entitled under Illinois law. The court also noted that it would need to hold a hearing to confirm the sale (thereby allowing it to go to closing) upon a party's motion, and at such a hearing it could decide not to confirm the sale if, among other things, "justice was … not done."

Kirkland Townsend has brought an appeal from the rulings we have just described. Concerned about our appellate jurisdiction, we asked the parties for additional briefing on that point. Those briefs, plus our independent review of the case, convince us that the appeal must be dismissed for want of appellate jurisdiction.

## I

In 2005, Townsend signed a promissory note for $136,000 with Fremont Investment & Loan. He needed the money to purchase a condominium in the South Shore neighborhood of Chicago. At the same time, Townsend executed a mortgage on the property, naming Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee. (MERS was Fremont's nominee.) After Townsend ceased making payments on his mortgage in 2011, MERS assigned the mortgage to HSBC Bank, USA; MERS remained Fremont's nominee,

however, for a junior mortgage Fremont held in the amount of $34,000. Shortly thereafter, HSBC filed a complaint against Townsend in the district court asking for a judgment of fore-closure of the mortgage, sale of the condominium, and relat-ed relief under Illinois law. The district court's subject-matter jurisdiction was based on diversity. See 28 U.S.C. § 1332(a)(1).

Representing himself, Townsend answered the com-plaint. HSBC then moved for summary judgment. It sup-ported its motion with evidence showing that Townsend was in default; that he owed $141,425.65 on the note; and that HSBC owned both the note and the mortgage. Town-send failed to respond to HSBC's motion, and so the district court granted it in open court on September 6, 2012. Later that day, it entered a written judgment of foreclosure, an or-der finding that Townsend owed the bank $143,569.65 (rep-resenting principal, interest, attorney's fees, and costs), and an order providing for judicial sale of the property if Town-send did not pay before the redemption period expired. The court wrote that the judgment was "a final and appealable order" that was "fully dispositive" of all defendants' inter-ests for purposes of Federal Rule of Civil Procedure 54(b).

At the same time, the court retained "jurisdiction over the parties and subject matter of this cause for the purpose of enforcing th[e] Judgment or vacating said Judgment if a re-instatement is made as set forth in this Judgment." The court acknowledged that "[u]pon motion and notice," it would be required to hold a hearing to confirm the judicial sale pursu-ant to 735 ILCS 5/15-1508. After such a hearing, it could de-cide not to enter a confirmation order, if it found that appro-priate parties did not receive proper notice of the sale, if the

terms of the sale were unconscionable, if the sale was con-
ducted fraudulently, "or … justice was otherwise not done."
Thirty days after the order confirming the sale, the purchaser
obtains the right to possession of the property. 735 ILCS
5/15-1508(g). (This is a good time to observe that the word
"sale" is used in several senses in the governing Illinois stat-
utes: (1) as the formal judicially authorized event at which
people bid for the property in foreclosure—we call this the
"judicial sale" in this opinion; (2) as the confirmation of the
judicial sale—the step, resembling closing, at which the pur-
chaser's right to a deed is established; and (3) as the final
transfer of possession. We have attempted to be precise
about which meaning is involved at various points in our
discussion.)

Elsewhere in the judgment, the district court said that it
would appoint a special commissioner to conduct the judi-
cial sale according to instructions in the order. The court
concluded that HSBC's interest was superior to that of MERS
(which as we have noted was still acting on Fremont's behalf
as nominee for its junior mortgage). It ordered that ultimate-
ly the proceeds of the sale would be paid out according to
the terms of the judgment and 735 ILCS 5/15-1512. The
judgment also provided that if the proceeds of a confirmed
sale came up short, a deficiency judgment would be entered
against Townsend for the difference.

After the parties submitted their briefs on Townsend's *pro
se* appeal of the district court's foreclosure judgment, we or-
dered supplemental briefing on the question of appellate ju-
risdiction. We asked the parties to address whether (1) the
district court improperly certified its judgment as final un-
der Rule 54(b); (2) its judgment qualified as an appealable

injunction under 28 U.S.C. § 1292(a); or (3) the doctrine of *Forgay v. Conrad*, 47 U.S. (6 How.) 201 (1848), supported jurisdiction. We recruited attorney Kenneth J. Vanko to represent Townsend, and we are grateful to him for his able service to his client and the court, and to all counsel for the helpful supplemental briefs.

## II

We consider first whether we may hear Townsend's appeal under the final judgment rule expressed in 28 U.S.C. § 1291. That provision states that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." As the Supreme Court recently reiterated, "[a] party can typically appeal as of right only from [a] final decision." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691 (2015). The first question before us is whether the district court's disposition of Townsend's case was final for purposes of section 1291.

Although section 1291 should be given "a practical rather than a technical construction," the law's "core application is to rulings that terminate an action." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (quotations omitted). Such a decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Several aspects of the district court's ruling in this case convince us that it fails to meet this standard.

When all is said and done, the district court's judgment of foreclosure and order to conduct a judicial sale leave too much up in the air for us to regard the action as terminated, with nothing left but the mechanical details of collection or

other enforcement measures. Illinois law specifies the various steps that must be taken; it is the governing law in this diversity action, and so we must see how the district court's actions fit into the regime Illinois creates for foreclosures. Like many states, Illinois protects mortgagors in foreclosure by giving them statutory periods of both redemption and reinstatement. The reinstatement statute permits the mortgagor to "reinstate the mortgage" by "curing all defaults then existing." At that point, "the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and the mortgage documents shall remain in full force and effect as if no acceleration or default had occurred." 735 ILCS 5/15-1602. The redemption statute speaks of the mortgagor's ability to "redeem the real estate from the foreclosure," 735 ILCS 5/15-1603(f)(1), and states that upon receiving the amount owed, the mortgagee "shall promptly furnish the mortgagor with a release of the mortgage or satisfaction of the judgment, as appropriate, and the evidence of all indebtedness secured by the mortgage shall be cancelled." 735 ILCS 5/15-1603(f)(3).

This language indicates that the exercise of the right of either reinstatement or redemption has the potential to undo the foreclosure, scuttling the need for the process of executing the judgment. The district court was well aware of this: its foreclosure judgment explicitly incorporates these statutory rights, stating that "[t]he subject real estate shall be sold pursuant to statute at the expiration of both the reinstatement period and the redemption period." This language indicates that the expiration of both of these periods—an event that will occur if a mortgagor *fails* to exercise either right—is a condition that must be satisfied before the initial judicial

sale of the foreclosed property may proceed; closing, confirmation, and transfer cannot take place until the successful bidder is identified. As the Supreme Court noted years ago, "[a] question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988). But if the resolution of the outstanding question will either alter the order or moot or revise the resolution of the case, finality is lacking. In every case decided under Illinois law, entry of the foreclosure judgment marks the beginning of a period in which critical matters remain to be resolved: whether the mortgagor will exercise her statutory redemption and reinstatement rights, and, should a judicial sale occur, whether it complies with all statutory requirements.

Other aspects of Illinois law point in the same direction. The law expressly provides for a post-judicial-sale inquiry into whether "justice was otherwise not done" by the auction. 735 ILCS 5/15-1508(b)(iv). The same provision directs the court on motion to determine whether proper notice of the sale was given and whether the sale was conducted fraudulently or with unconscionable terms. If the court finds any of these things to be true, it need not confirm the sale. Confirmation is therefore a critical step. Not until the court confirms the sale triggered by the judgment of foreclosure may it enter a deficiency judgment against the mortgagor. Damages are part of the judgment and essential to finality; lack of quantified damages prevents an appeal. See *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) ("[W]here assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within

the meaning of 28 U.S.C. § 1291.").

A number of questions remain about the damages Townsend will have to pay. The amount that the judicial sale yields depends not only on the price obtained at the auction but also on, for example, whether the auction was conducted in a commercially reasonable way to maximize the price. If it was not, the court might confirm the sale but decline to enter a deficiency judgment. See 735 ILCS 5/15-1508(b)(2). A mortgagor might protest that an auction delivering far below the amount specified in the foreclosure judgment was not conducted in the way most likely to attract a high bid. The district judge must then evaluate that assertion. If the judge decides that better advertising or other measures would have produced a bid closer to the full amount owed, he might either cut or deny any deficiency judgment. If there are serious defects in the auction, then the district court has the authority not to confirm the sale at all, and transfer of possession will never occur. The deficiency judgment amount might also depend on how much time elapses between the district court's sale order (which quantifies the debt *at that moment*) and the purchaser's payment of the price at the auction. The longer the delay, the more prejudgment interest must be added under the terms of the note. This process is far from mechanical. No one can know the amount of this part of the court's judgment until the asset has been exchanged for money. That is fatal to finality.

Our dissenting colleague criticizes our description of Illinois law; he argues that Illinois courts have no discretion to reduce deficiency judgments. In taking the position that a deficiency judgment must, as a matter of law, be the difference between the default amount and the foreclosure sale

price, however, our colleague principally relies on a case that cites a repealed section of the Illinois code. See *Illini Fed. Sav. & Loan Ass'n v. Doering*, 516 N.E.2d 609 (Ill. App. Ct. 1987) (quoting Ill. Rev. Stat. 1985, ch. 110, par. 15-112 (repealed 1987)). Even in *Illini*, the court acknowledged that the deficiency judgment should reflect the property's sale price "absent any fraud or irregularity in the foreclosure proceeding." 516 N.E.2d at 611. The potential for irregularity is exactly what concerns us here. And in any event, the current version of the law (which applied at the time of the events here) gives courts discretion over deficiency judgments. A judge's order confirming a foreclosure sale "*may* also … provide for a personal judgment against any party for a deficiency." 735 ILCS 5/15-1508(b)(2); see also 735 ILCS 5/15-1508(f) ("*If* the order confirming the sale includes a deficiency judgment … .") (emphases added in both). The statute uses the same discretionary language to discuss the amount of the judgment: the "judgment *may be entered* for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales." 735 ILCS 5/15-1508(e) (emphasis added). At most, some ambiguity may be introduced when the statute later states that a "court *shall* also enter" a deficiency judgment in a confirmation order. *Id.* Even that command is qualified, however, because the amount requested must be "proven" and the court must be "otherwise authorized" to enter the judgment. *Id.* The latter two safety valves logically refer back to the court's ability to evaluate the fairness of the foreclosure process.

Nothing in the district court's foreclosure and judicial-sale order in this case gives us reason to think that the remaining steps are so ministerial, inevitable, or unrelated to the merits of the case that they do not defeat finality. We take

as a given that many orders confirming post-foreclosure judicial sales proceed without a hitch (at least from the bank's perspective). But that does not mean that the rights of redemption and reinstatement, or the court's review of the auction process, are meaningless. The Supreme Court of Illinois has said that the provision of section 15-1508(b)(iv) requiring review to see if "justice was otherwise not done" "acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment." *Wells Fargo Bank, N.A. v. McCluskey*, 999 N.E.2d 321, 329 (Ill. 2013). Neither the percentage of cases in which this is found nor the narrowness of the legal standard matter: finality does not depend on the odds. The question is whether the existence of these rights, which are embedded within Illinois's foreclosure scheme, renders a foreclosure and judicial-sale order non-final, when the sale is yet to be conducted and confirmation has not yet occurred. We believe that it does.

Finally, we note that our understanding of these statutes matches that of the Illinois courts. The Supreme Court of Illinois has said that it is "well settled" that a foreclosure judgment is not a final judgment "because it does not dispose of all issues between the parties and it does not terminate the litigation." *EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012). The court explained that "although a judgment of foreclosure is final as to the matters it adjudicates, a judgment foreclosing a mortgage, or a lien, determines fewer than all the rights and liabilities in issue because the trial court has still to enter a subsequent order approving the foreclosure sale and directing distribution." *Id.* Though the state's view of finality for state-law purposes does not dictate the result for federal appellate jurisdiction, the Illinois court's list of open questions is independently useful.

In sum, there are several events in Illinois that can or must occur between a foreclosure judgment entered pursuant to Illinois law and an eventual exchange of property for money and deficiency judgment. An order of foreclosure and judicial sale by itself, such as the one issued in Townsend's case, is thus not a final judgment under 28 U.S.C. § 1291.

**III**

Although we do not have jurisdiction to hear Townsend's appeal under traditional finality doctrine, we still must ask whether there is some other basis of appellate jurisdiction. Three theories deserve a look, as our briefing order implied: first, the possibility that the court's order was final as a "separate claim" under Federal Rule of Civil Procedure 54(b); second, the possibility that this is in effect an injunction eligible for interlocutory appeal under 28 U.S.C. § 1292(a)(1); and third, whether it may be immediately appealable under the doctrine announced in *Forgay v. Conrad*, 47 U.S. (6 How.) 201 (1848). We address each of these questions in turn.

A

The district court here certified the judgment of foreclosure and sale as final and appealable under Federal Rule of Civil Procedure 54(b). That does not dispose of the question, however; this court must consider for itself whether the judgment satisfies the requirements of that rule. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008); see also *Wetzel*, 424 U.S. at 740 (rejecting Rule 54(b) certification). The operative language of Rule 54(b) is as follows: "When an action presents more than one claim for relief … or when multiple parties are involved, the

court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

There are two problems with the district court's Rule 54(b) certification. First, the district court's judgment left no claims unaddressed; any issues that may arise after this judgment form part of the main claim, not an independent one. By its terms, Rule 54(b) does not apply when there is no separate claim remaining to be decided. See *Wetzel*, 424 U.S. at 742–43. Second, Rule 54(b) requires an express determination that there is no just reason for delay, and we find none on the record. Even if there were multiple claims or multiple parties, Rule 54(b) is unavailable without that certification. See *Constr. Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 467–68 (7th Cir. 1993).

B

The next possibility requires us to decide whether the order directing the judicial sale of the property amounts to an injunction for purposes of 28 U.S.C. § 1292(a)(1). That statute authorizes interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." We have taken care to construe this provision narrowly to avoid opening a floodgate to piecemeal appeals. *Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir. 2003); see also *Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1011 (7th Cir. 2013). With that concern in mind, we have declined to characterize a decree foreclosing a mortgage and ordering sale as an injunction within the meaning of § 1292(a)(1). See *United States v. Hansen*, 795 F.2d 35, 38–39 (7th Cir. 1986). Though a decree of foreclosure is an equitable remedy, we have made clear that "[n]ot every equi-

table order is an injunction for purposes of section 1292(a)(1)," and have concluded that foreclosure judgments fall outside of § 1292(a)(1)'s limits. *Id.* While it is apparent that foreclosure on a residence can eventually cause irreparable harm, Illinois courts and federal courts both are empowered to use stays pending appeal to manage the risk of such harm by erroneous decisions. Compare *Bullard*, 135 S. Ct. at 1695–96 (acknowledging that some bankruptcy confirmation orders may have "immediate and irreversible effects," but nonetheless holding that an immediate appeal was unavailable and pointing out that several mechanisms to address such harm are available). We see no reason to depart from *Hansen*'s holding and thus decline to exercise jurisdiction to hear Townsend's appeal under § 1292(a)(1).

## C

We turn finally to the finality rule described in *Forgay v. Conrad*. That case, whose facts starkly remind the reader that times have changed, arose from a bankruptcy in Louisiana. The debtor had deeded away real estate and slaves in New Orleans, but the trial court had set aside those deeds as fraudulent transfers. Most importantly for present purposes, the trial court had then ordered that the real estate and slaves be delivered immediately to the person we would now call the trustee in bankruptcy. On appeal, the first issue was whether the transfer order was appealable. In an opinion by Chief Justice Taney, the Supreme Court denied a motion to dismiss the appeal. The Court held that the order was appealable because the parties in current possession of the real estate and slaves faced a threat of irreparable harm if an immediate appeal were not allowed. *Forgay*, 47 U.S. (6 How.) at 202–04.

We have interpreted *Forgay* to allow immediate review of an order "directing delivery of property where such an order would subject the losing party to irreparable harm." *United States v. Davenport*, 106 F.3d 1333, 1335 (7th Cir. 1997). The irreparable harm requirement avoids an unduly broad reading of *Forgay* under which "any order requiring immediate payment also is immediately appealable." *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 126 (7th Cir. 1997).

When it comes to the forced sale of a residence, we can assume that the potential for irreparable harm is great. See *Davenport*, 106 F.3d at 1335. But under the *Forgay* doctrine, the issue for us is *whether* and *when* Townsend would face an imminent threat of irreparable harm if the judgment ordering foreclosure and judicial sale were not appealable. That question calls for a close examination of Illinois law and the procedures the district court would use to carry out the foreclosure and sale. See *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1026 (7th Cir. 2006) (looking to state law settling title to property to determine when purchaser rights irreversibly attached); see also FED. R. CIV. P. 69 (borrowing state procedures to execute federal court judgments).

Under Illinois law, the judgment of foreclosure and judicial sale posed no imminent threat of irreparable harm to Townsend. His interests are protected in several ways. First, a mortgagor may be able to take advantage of the redemption and reinstatement period before the judicial sale. See *Kling v. Ghilarducci*, 121 N.E.2d 752, 756 (Ill. 1954). As we already have discussed, the sale cannot be conducted until this time has run. See 735 ILCS 5/15-1507(b).

After the judicial sale, the mortgagor is a big step closer to loss of his residence, but still not there. The interests in the

property of all persons made party to the foreclosure "shall be terminated by the judicial sale of the real estate, pursuant to a judgment of foreclosure, provided the sale is confirmed." 735 ILCS 5/15-1404; see also *McCluskey*, 999 N.E.2d at 330 (noting that it is the confirmation of sale that "divests the borrower of her property rights"). Immediately after the judicial sale and payment in full of the amount bid, the purchaser receives only a "certificate of sale." See 735 ILCS 5/15-1507(f). (In residential foreclosures the defaulting mortgagor-owner has a special, final thirty-day period for redemption when "the purchaser at the sale was a mortgagee who was a party to the foreclosure," *i.e.*, when a lender purchases the property, typically with a credit bid, for less than the amount needed to redeem. See 735 ILCS 5/15-1604(a).)

The transfer of rights memorialized by the certificate of sale becomes permanent only if the judicial sale is confirmed. Only after confirmation does the purchaser obtain a deed. 735 ILCS 5/15-1509(a). The deed passes title to the purchaser, 735 ILCS 5/15-1509(b), and serves as "an entire bar of … all claims of parties to the foreclosure," 735 ILCS 5/15-1509(c). Yet even then a mortgagor can delay the permanent transfer of title to the purchaser by obtaining a stay pending appeal of the order confirming sale. See ILL. SUP. CT. R. 305(k) (under substantive state law, non-party purchasers gain property rights that are not impaired by reversal on appeal unless the sale is stayed); *Aurora*, 442 F.3d at 1026–27 (applying Illinois law and finding that "in the absence of a stay, a sale of real property to a third party bars an appeal from the judgment authorizing the sale"); *Hansen*, 795 F.2d at 39 (suggesting that defendants could avoid irreparable harm from sale by seeking a stay of the decree of sale); *FDIC v. Meyer*, 781 F.2d 1260, 1263 (7th Cir. 1986) (in absence of stay, sale to

good faith purchaser moots appeal); *Horvath v. Loesch*, 410 N.E.2d 154, 158 (Ill. App. Ct. 1980). So long as a stay is in place, a purchaser at a foreclosure sale is obliged to return the property if the judgment of foreclosure is reversed on appeal. See *Wash. Mut. Bank, F.A. v. Archer Bank*, 895 N.E.2d 677, 680 (Ill. App. Ct. 2008) (permitting review of "all earlier nonfinal orders that produced the final judgment" embodied in the orders confirming the sale).

Thus, under Illinois mortgage foreclosure law, a mort-gagor-owner who is residing in the property and taking care of it should not face the kind of immediate irreparable harm required by *Forgay* until there is time to file an appeal and to seek a stay of the final order confirming the judicial sale. Such an owner will ordinarily be entitled to retain posses-sion of the property until thirty days after confirmation of the foreclosure sale. 735 ILCS 5/15-1701(b)(1) & (c). (The statute also provides for exceptions when needed to protect the interests of the lender.) Under the *Forgay* doctrine, the issue is whether an immediate appeal is needed to prevent irreparable harm resulting from an immediate transfer of possession of the property. Illinois law provides a number of protections against irreparable harm, even though orders of foreclosure and judicial sale are not immediately appealable in state practice. Similarly, federal courts at every level have the authority to stay the effect of a judgment pending ap-peal, see FED. R. CIV. P. 62, and so there is no need here to in-voke the *Forgay* doctrine to allow an immediate appeal.

In light of this conclusion, we have no reason to reach the question whether the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), overruled the *Forgay* doctrine. While there is some tension between the

*Forgay* doctrine and *Mohawk Industries*, see 558 U.S. at 106, and that tension has been reinforced by *Bullard*, the Court has not told us that *Forgay* has been overruled, and only it has the prerogative of overruling its own decisions. *E.g., Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 567 F.3d 856, 857–58 (7th Cir. 2009), *rev'd sub nom. McDonald v. City of Chicago*, 561 U.S. 742 (2010), quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

## IV

For all these reasons, we conclude that we do not have jurisdiction to hear this appeal, which is therefore DISMISSED. Because the district court's entry of the Rule 54(b) judgment compelled Townsend to appeal when he did, however, we order that the costs on appeal will be assessed against HSBC. See FED. R. APP. P. 39(a).

HAMILTON, *Circuit Judge*, dissenting. I view the district court's judgment of foreclosure as final under 28 U.S.C. § 1291. Rather than dismiss the appeal, I would affirm on the merits. Under long-established finality principles, a foreclosure judgment is final if it (a) settles the merits and the total amount of the debt, (b) identifies the property to be sold to satisfy the judgment, and (c) orders the priority of competing claims to the sale proceeds. See, e.g., *Whiting v. Bank of the United States*, 38 U.S. (13 Pet.) 6, 15 (1839), and cases following it.

The judgment of foreclosure here does all of those things. All that remains in this litigation is executing that judgment by judicial sale of the property securing the debt and distributing the sale proceeds. For two centuries American appellate practice has distinguished between a judgment on the merits and later matters of execution, holding that open issues involving execution do not defeat finality of the underlying judgment on the merits. That settled approach to finality works. We should not upset it with the novel approach of uncertain scope adopted by the majority.

I agree with my colleagues, though, that Federal Rule of Civil Procedure 54(b), 28 U.S.C. § 1292, and the doctrine announced in *Forgay v. Conrad*, 47 U.S. (6 How.) 201 (1848), do not authorize this appeal. Our disagreement is about whether the need to execute the judgment of foreclosure by carrying out the court-ordered sale prevents an immediate appeal of the judgment of foreclosure under traditional § 1291 principles.

Part I of this opinion explains the general rule: a judgment resolving all claims on the merits is final and appealable even if it remains to be executed with the court's assis-

tance. That remains true even if a second appeal regarding the execution is possible. One specialized application of that general rule is that a judgment of foreclosure that resolves the amount of the debt and orders sale of the mortgaged property is a final judgment. The Supreme Court has followed this approach to mortgage foreclosures since the earliest days of our Republic. Prior decisions of this and other circuits have long followed this approach.

With fair warning to readers, Part II digs into the weeds of the execution process under Illinois foreclosure law that have persuaded my colleagues that this judgment of foreclosure is not yet final. If we look past the jargon of mortgage cases, we see that the statutory provisions for redemption and reinstatement are merely specialized instances of the right any defendant has to satisfy a judgment voluntarily before it is executed. Potential disputes about the fairness of a judicial sale do not undermine finality here any more than do analogous disputes in other proceedings to execute judgments. The routine arithmetic needed to calculate the amount of a deficiency judgment or post-judgment interest also does not undermine finality when those calculations follow mechanically from a judgment that determines the total amount owed and the priorities of creditors.

Finally, Part III explains briefly why the district court did not err by granting summary judgment in favor of HSBC on the merits of its claim against appellant Townsend, who defaulted on his residential mortgage loan.

Before diving into the details, though, I'll try to explain why this issue of appellate jurisdiction is worth an admittedly lengthy dissent. What difference does it make whether a

borrower in Townsend's position must wait longer to appeal as long as he is able to appeal in the end?

First, the majority's novel decision upends about two centuries of federal precedent and practice on finality for purposes of appeal. Courts applying § 1291 and its cousins have recognized the difference between a judgment on the merits and the decisions needed to execute that judgment. The distinction between these phases of the litigation is established and familiar. It works.

The majority's decision adopts an uncertain standard that collapses that distinction, at least for mortgage foreclosures. In the majority's view, it is not enough for the merits of a dispute to be finally resolved. The majority also requires that all issues relating to execution be resolved in the district court before the underlying judgment on the merits is appealable. This reasoning either (a) commits our circuit to using different finality rules when we consider mortgage foreclosures, or (b) signals that appeals from other judgments that have also long been considered final will need a fresh look.

In either case, the majority's approach will impose confusion, uncertainty, and expense where the law is not broken and needs no fixing. See *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 69 (1948) ("The considerations that determine finality are not abstractions but have reference to very real interests—not merely those of the immediate parties, but more particularly, those that pertain to the smooth functioning of our judicial system."). Even if future cases limit the majority's reasoning to mortgage cases, the practical effect will still be substantial. Federal district courts handle thousands of mortgage foreclosure cases every year, roughly ten

per district judge per year. See Judicial Business of the United States Courts, Annual Report of the Director tbl. C-2 (2014).

Adding to the uncertainty, the majority bases its decision on a novel view of substantive Illinois law. When a valid foreclosure sale leaves a deficiency in the amount owed on the judgment, Illinois law entitles the lender to a judgment against the borrower personally for the deficiency. Yet the majority finds (ante at 8–9) that Illinois judges have discretion to decline to award deficiency judgments against borrowers when a foreclosure sale fails to cover the total amount of the debt. As explained below in Part II–D, I believe that view of Illinois law is mistaken and will come as quite a surprise to the Illinois bar and bench.

I would be less troubled by the majority's approach if it minimized the uncertainty by announcing a bright-line rule on the finality of foreclosure judgments. See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988) (stressing the importance of adopting "bright-line" appellate jurisdiction rules to ensure uniformity and predictability); *Kennedy v. Wright*, 851 F.2d 963, 967 (7th Cir. 1988) (citing *Budinich* and collecting cases making same point in our circuit); *Exchange Nat'l Bank of Chicago v. Daniels*, 763 F.2d 286, 292 (7th Cir. 1985) ("The first characteristic of a good jurisdictional rule is predictability and uniform application."). No such clear rule can be divined from the piecemeal approach adopted here. The majority opinion does not tell us what to do in a case presenting only one or two of the three issues it thinks defeat finality.

Second, the different approaches to appellate jurisdiction have significant practical and economic consequences for all

parties in the foreclosure litigation. Let's assume that a borrower has a good defense on the merits but loses in the trial court. Under the majority's approach, she cannot obtain appellate review of the judgment until after her home has been sold at auction, after the trial court has confirmed that sale, and after a buyer has deposited cash and stands ready to take possession. To preserve her right to appeal, the borrower with the good defense must ask for and obtain a stay pending appeal. See Ill. Sup. Ct. R. 305(k) (under substantive state law, non-party purchasers gain property rights that are not impaired by reversal on appeal unless the sale is stayed); *Horvath v. Loesch*, 410 N.E.2d 154, 158 (Ill. App. 1980); *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1026–27 (7th Cir. 2006) (under Illinois law, "in the absence of a stay, a sale of real property to a third party bars an appeal from the judgment authorizing the sale"). The possibility of such stays is enough to avoid application of the *Forgay* doctrine, as the majority explains, but it remains to be seen whether district courts and our court will grant such stays routinely. I hope they will, but it is not a foregone conclusion.

Third, even if we assume that the harshest effects of the majority's approach on borrowers will be mitigated by routine stays pending appeal, I suspect the economic result will be negative for both borrowers and lenders. Consider the bidding behavior of outside buyers at auctions that take place at two different stages: (a) after the merits of the foreclosure have been settled with a final judgment and the conclusion of any appeal; or (b) while the merits of the foreclosure are still subject to appeal. Basic economic principles suggest that, all other things being equal, a buyer should be willing to pay more at stage (a) than at (b). The buyer at stage (b) may need to keep the bid open for months or even

years, sharply limiting other uses of the money in the mean-time. The result should be lower bid prices in auctions, to the detriment of both lenders and borrowers. See *United States v. Buchman*, 646 F.3d 409, 410 (7th Cir. 2011) ("If buyers believe that the parcels they acquire at auction can be snatched back whenever they have made a good deal, they will pay less at foreclosure sales—and borrowers such as Buchman will be worse off as a result."); *Aurora Loan Services*, 442 F.3d at 1028, citing Michael H. Schill, *An Economic Analysis of Mortgagor Protection Laws*, 77 Va. L. Rev. 489, 534 (1991). And where a foreclosure is set aside on the merits after a court-ordered sale, the expense and effort of the sale and its confirmation will all be for naught. I turn now to the details of the legal analysis.

I.   *Merits v. Execution: Finality Doctrine Under § 1291*

Section 1291 provides that the "courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States." The Supreme Court has defined a final decision in general terms as "one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Engineers and Participating Employers*, 571 U.S. —, 134 S. Ct. 773, 779 (2014), citing *Caitlin v. United States*, 324 U.S. 229, 233 (1945). The judgment of foreclosure here ended this litigation on the merits and left nothing for the court to do but execute the judgment.

Finality in a mortgage foreclosure case is best understood as a specialized application of more general rules of finality that apply in the simpler case of a suit on an unsecured debt. See *In re Sorenson*, 77 F.2d 166, 167 (7th Cir. 1935) (making

this comparison and holding that judgment foreclosing mortgage and ordering sale was "final decree" that barred bankruptcy injunction).

Pared down to the basics: Suppose P sues D for breach of a promissory note. P wins a judgment ordering D to pay X dollars to P. That judgment is final and appealable. It is final and appealable even though D may choose simply to pay the judgment, and even though, if D does not pay, P may need the court's help to identify D's property and then to seize and sell it to satisfy the judgment. The judgment is final even if we do not yet know exactly how the judgment will be executed. See Fed. R. Civ. P., Forms 70 & 71; *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 857, 861–62, 867–68 (7th Cir. 2013) (resolving dispute about merits of claims on promissory note even though district court in post-judgment proceedings had issued later asset discovery order that was itself not immediately appealable); see generally 15B Wright & Miller, Federal Practice and Procedure § 3916 (2d ed.) (discussing appellate jurisdiction over post-judgment orders).

Now suppose the promissory note is secured by collateral. The key difference is that the lender has laid the groundwork for easier, more streamlined execution of any judgment needed to collect the debt. There is no need to search out the debtor's property. By agreement, the property securing payment has been identified in advance. By the same agreement, the lender has also been granted a priority for its claim over those of other creditors who might want to seize the same property to pay off their loans to the same borrower.

With a secured loan, the fact that the property available for execution has already been identified does not prevent the underlying judgment on the merits ("D shall pay P the sum of X Dollars") from being final and appealable. Nor does it matter that the judgment in such cases stays execution for a limited time to give the defendant a chance to avoid the sale by making the plaintiff whole through reinstatement, redemption, or a settlement. Cf. Fed. R. Civ. P. 62(a) (staying execution of judgments for 14 days, without delaying time for appeal); *Soo Line R. Co. v. Escanaba & Lake Superior R. Co.*, 840 F.2d 546, 550 (7th Cir. 1988) (judgment awarding a specified amount of money was final even though plaintiff could not demand immediate payment and payment was contingent on arbitrator decision).

Over more than two centuries, the Supreme Court has applied these basic principles to hold judgments foreclosing mortgages and ordering the sale of the property securing the loans are final and appealable before a judicial sale and its confirmation take place. In *Whiting v. Bank of United States*, 38 U.S. (13 Pet.) 6, 15 (1839), a mortgage had been foreclosed and the property had been sold. Heirs of the borrower then sought to set aside both the foreclosure and the sale. Writing for the Court, Justice Story considered the question of finality and said that the issue depended on

> whether the decree of foreclosure and sale is to be considered as the final decree in the sense of a Court of Equity, and the proceedings on that decree a mere mode of enforcing the rights of the creditor, and for the benefit of the debtor; or whether the decree is to be deemed final only after the return and confirmation of the sale

by a decretal order of the Court. *We are of opinion that the former is the true view of the matter. The original decree of foreclosure and sale was final upon the merits of the controversy.*

38 U.S. at 15 (emphasis added).

The Court had applied the same rule long before *Whiting*, holding simply that "a decree for a sale under a mortgage, is such a final decree as may be appealed from." *Ray v. Law*, 7 U.S. (3 Cranch) 179, 180 (1805). The Court has repeated the point many times since. E.g., *Grant v. Phoenix Mutual Life Ins. Co.*, 106 U.S. 429, 431 (1882) ("[A] decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal."); *McGourkey v. Toledo & Ohio Cent. Ry. Co.*, 146 U.S. 536, 545 (1892) ("[I]t is clear that a decree is final, though the case be referred to a master to execute the decree by a sale of property or otherwise, as in the case of the foreclosure of a mortgage.").

Thus, the general rule in American law has long been that once a judgment of foreclosure and sale is entered, it is final because all that remains to be done is executing the judgment to enforce the rights and obligations that have been adjudicated.

Now it's true that some foreclosure orders are not final and appealable, but that's because they leave undecided questions going to the merits of the dispute. In essence, those judgments are not final because they leave the X in "D shall pay P the sum of X Dollars" undefined or subject to change.

For example, even if liability is decided, a foreclosure order is not truly final if it "leaves the amount due upon the debt to be determined, and the property to be sold ascertained and defined." *McGourkey*, 146 U.S. at 545–46, 550 (order not final because it directed master to determine rents, profits, and damages to railroad's rolling stock, even though it also ordered turnover of property); see also *Grant*, 106 U.S. at 431 (order not final because it referred case to an auditor to "ascertain the amount due upon the debt, the amount due certain judgment and lien creditors, the existence and priorities of liens, and the claims for taxes"); *North Carolina R. Co. v. Swasey*, 90 U.S. (23 Wall.) 405, 409–10 (1874) (order not final when the amount of the debt and property to be sold were not specified). So too when the order "merely determines the validity of the mortgage, and, without ordering a sale, directs the case to stand continued for further decree upon the coming in of the master's report." *McGourkey*, 146 U.S. at 545; see also *Burlington, C.R. & N. Ry. Co. v. Simmons*, 123 U.S. 52, 54 (1887) (order not final where validity of lien on mortgage was established but amounts due to parties had not been fixed and court expected further action before it could carry decree into effect).

If the majority's view in this case were correct, all of these cited opinions should have been much shorter: the appeals should have been dismissed simply because the foreclosure sales had not yet been carried out and confirmed. Instead, though, the Court focused on the details of the undecided merits issues. These examples are also consistent with the more general rule that a judgment is not final where it establishes the defendant's liability but the amount of damages remains undecided. See, e.g., *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976).

These principles are so well established that case law addressing the finality problem is relatively scarce, but the available cases show that these principles have been healthy until now. We applied them in *United States v. Davenport*, 106 F.3d 1333 (7th Cir. 1997), where we held that an order of foreclosure and sale was not immediately appealable under traditional finality doctrine. The only reason for that conclusion, though, was that the district court had reserved judgment on some merits questions: whether tax fraud penalties were appropriate and whether a co-defendant would have any right to the proceeds of the sale. *Id*. at 1334–35. Under our reasoning in *Davenport*, an ordinary order of foreclosure and sale like the order here would have been final. (In *Davenport*, we also found we had jurisdiction under *Forgay v. Conrad*, 47 U.S. (6 How.) 201 (1848), for reasons not applicable here.)

We applied these same principles in *In re Sorenson*, 77 F.2d 166 (7th Cir. 1935), where a bankruptcy court's power to enjoin a foreclosure proceeding depended on whether a decree of foreclosure ordering a sale was a "final decree." In reasoning directly applicable here, we held that the foreclosure decree was final:

> In a foreclosure proceeding a decree which definitely fixes and adjudicates, as between the parties to the litigation, all issues relating to their mutual rights and obligations is, to all intents and purposes, a final decree. The usual decree of foreclosure does this. *Those matters incident to the execution of the decree—the sale, report of sale, deficiency decree, redemption, issuance and recording of deed, and the like—are to the de-*

> *cree of foreclosure what at law the execution, sale,
> redemption, and the like are to the final judgment to
> which they are incidental. A decree or judgment is
> none the less final because of the things thereafter to
> be done to give it effect.*

77 F.2d at 167 (emphasis added). We followed the same approach in *Central Trust Co. of New York v. Peoria, Decatur & Evansville Ry. Co.*, 118 F. 30 (7th Cir. 1902), where parties appealed an order confirming a foreclosure sale. They tried in part to challenge the merits of the underlying judgment of foreclosure. We said the merits challenge came too late, treating the issue as needing neither citation nor explanation: "The question cannot be raised on objection to the sale." *Id.* at 32.

We have not been alone in applying the Supreme Court precedents to find that a foreclosure order is final so long as it conclusively establishes the extent of the defendant's liability for the defaulted loan and identifies the property to be sold. Both the Ninth and Fifth Circuits have read *Ray* and *Whiting* and the cases that followed to establish exactly this rule. See *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1101 (9th Cir. 1998) (order meeting these conditions was final even though the judgment left "the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sale[]"); *Citibank, N.A. v. Data Lease Financial Corp.*, 645 F.2d 333, 337–38 (5th Cir. 1981) (order meeting these conditions had been final and therefore was unreviewable in later appeal of order confirming sale).

Under these principles and precedents, the judgment of foreclosure here is not incomplete or uncertain in any way that could defeat finality. It resolves the merits of the foreclo-

sure dispute. It leaves nothing to do but execute the judgment by carrying out the sale and distributing the proceeds. The judgment establishes that Townsend is liable to HSBC for default under the note. It specifies the damages he must pay as a result of his default—$143,569.65—which includes the principal balance and specified amounts of accrued prejudgment interest and attorney fees. The judgment also orders that post-judgment interest accrues at the statutory rate until the judgment is satisfied through sale of the property or through reinstatement or redemption. It also resolves the rights of all lienholders claiming an interest in the property. It fixes the priority of interests by specifying that MERS's rights under a second mortgage are inferior to HSBC's, and it orders that proceeds will be distributed to both HSBC and MERS in the manner specified by 735 ILCS 5/15-1512.

The judgment also sets out the ways it can be executed. It specifies when the reinstatement and redemption periods run. In the event that Townsend would not pay the amounts needed to reinstate or redeem (and he did not), it makes clear that the judgment will be satisfied through sale of Townsend's home. The judgment identifies the property to be sold and explains the procedures by which the sale officer (appointed by a separate order that same day) must conduct the sale. The judgment also provides that the court must enter a deficiency judgment against Townsend if "the proceeds of the sale are not sufficient to satisfy those sums due the Plaintiff."[1]

---

[1] The judgment also states that the court retains jurisdiction over the parties and subject matter "for the purpose of enforcing this Judgment or vacating said Judgment." That is not the sort of "reservation" of jurisdiction that defeats finality. A court in a civil case routinely retains jurisdic-

In other words, the judgment resolves the merits of HSBC's request for relief and can be executed mechanically following the sale. That makes it final.

The approach I would follow raises one pragmatic consideration. Illinois courts now apply the majority's approach in foreclosure appeals, see *EMC Mortgage Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012), though that has not always been true. See *In re Sorenson*, 77 F.2d at 168, quoting *Kirby v. Runals*, 29 N.E. 697, 698 (Ill. 1892) (decree foreclosing mortgage and decreeing sale of mortgage premises is final decree even though master is ordered to make report of sale); *Chicago & N.W. Ry. Co. v. City of Chi.*, 35 N.E. 881, 883 (Ill. 1893), citing *Whiting*, 38 U.S. (13 Pet.) 6 (1839), and *Grant*, 106 U.S. 429 (1882).

Under either approach to finality, however, some inconsistency between federal and state courts is unavoidable. The two other states in our circuit follow the approach I would continue under the federal precedents. See *Anchor Savings & Loan Ass'n v. Coyle*, 435 N.W.2d 727, 729–30 (Wis. 1989) (judgment of foreclosure and sale was immediately appealable despite separate need to conduct and confirm sale and compute deficiency judgment); *Bahar v. Tadros*, 123 N.E.2d 189, 189–90 (Ind. 1954) (judgment of foreclosure was immediately appealable). In any event, the question of finality in federal courts is a question of federal procedural law, *Budinich*, 486 U.S. at 198–99, and our job is to follow throughout the circuit what has been until now a clear rule.

---

tion to enforce its judgment and can vacate its judgment under Federal Rule of Civil Procedure 60(b) or state analogs.

II. *Executing the Judgment—The Open Issues*

The majority does not identify any open issue regarding the merits of the district court's judgment. The majority focuses instead on three open issues regarding execution: (1) the mortgagor's ability to redeem or reinstate the mortgage before the judicial sale; (2) the need to confirm any sale in a separate proceeding; and (3) the inability to determine the amounts of any deficiency judgment or interest until the fairness of the sale is evaluated.

None of these matters should prevent us from treating the judgment as final. They do not threaten the decisions that Townsend is in default and that HSBC is entitled to a specified amount of compensation, whether through sale of the home or other cash payment. No matter how the majority's issues turn out, all that can happen now is that HSBC's judgment will be either satisfied or abandoned. I explain first some general principles regarding execution of a judgment before addressing the specific issues that trouble the majority.

A. *Executing a Judgment—General Principles*

The majority concludes that the merits of a foreclosure action are not resolved until the trial court finds that the mortgaged property was properly sold and the amount of a deficiency judgment is set. The majority focuses on the uncertainty as to when and exactly how HSBC will collect its judgment against Townsend. The forced sale of a home is the most dramatic part of the typical foreclosure suit, but it's important to remember that selling the home is at bottom just one way to execute a judgment for failure to pay a debt as promised.

There is of course plenty of room for complication and controversy in executing a judgment. See, e.g., *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 523 (7th Cir. 2004) (recognizing that district court can invalidate foreclosure sale when it was not conducted properly). The execution process here is no exception. The judgment orders Townsend to pay HSBC $143,569.65, plus post-judgment interest. There are at least three ways Townsend could satisfy that judgment against him and make HSBC whole. First, he could just pay the money owed in cash by exercising his statutory redemption right, which amounts to a post-judgment settlement that the statute requires the creditor to accept. Second, he could exercise his statutory right of reinstatement, another form of statutory settlement that requires him to cure his defaults. Third and most likely, if Townsend cannot come up with the cash for either of the first two options, the court will execute the judgment by carrying out the sale of the mortgaged property and issuing a personal deficiency judgment for any balance still owing.

Having more than one choice for how to satisfy a judgment is commonplace. It does not undermine the finality of that judgment. "A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988); see also *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985) (allowing immediate appeal when "only a 'ministerial' task remains for the district court to perform").

Deciding any of the questions remaining here, which deal with exactly how Townsend and/or the court will satis-

fy the judgment of default against him, would not risk affecting the decision on the merits—that Townsend owes HSBC $143,569.65 plus interest and HSBC has first dibs on his home. To be sure, resolving some of these issues could affect whether Townsend needs to endure a forced sale of his home. But under the judgment of foreclosure, he can avoid the sale only if (1) he complies with the judgment by redeeming or reinstating his mortgage, (2) HSBC gives up on executing the judgment, or (3) the parties reach a private settlement.

The remaining post-judgment issues here are typical of a post-judgment proceeding that "must be viewed as a separate lawsuit from the action which produced the underlying judgment" and is "final … if it disposes completely of the issues raised" in the post-judgment proceeding. *In re Joint Eastern & Southern Dists. Asbestos Litig.*, 22 F.3d 755, 760 (7th Cir. 1994) (order authorizing discovery in aid of execution of judgment not appealable until end of case); see also *Solis v. Current Development Corp.*, 557 F.3d 772, 775–76 (7th Cir. 2009) (order in a post-judgment proceeding is treated like an order in "a freestanding lawsuit" and is final and appealable only if it resolves all issues in that proceeding); *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1184 (7th Cir. 1987) (post-judgment proceeding treated "as a separate lawsuit;" order in post-judgment proceeding fixing priorities of competing liens was final and appealable).

As a general rule, a losing party may appeal from a final judgment determining the merits and may appeal separately from a later order that concludes a post-judgment proceeding to execute the underlying judgment. See *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1223–25 (7th Cir. 1993);

*EEOC v. Gurnee Inns, Inc.*, 956 F.2d 146, 147–48 (7th Cir. 1992).

In mortgage foreclosure cases, in particular, courts have allowed separate appeals of the judgment of foreclosure and the order confirming the sale. See *Leadville Coal Co. v. McCreery*, 141 U.S. 475, 478–79 (1891) ("[W]e cannot fail to observe that the main scope and purpose of this appeal seem to be to relitigate questions fully determined by the final decree appealed from and affirmed."); *Citibank, N.A. v. Data Lease Financial Corp.*, 645 F.2d 333, 337–38 (5th Cir. 1981) (explaining that separate appeals may be taken from both the order directing foreclosure and sale and the order confirming sale).

In such cases, each appeal deals with quite different issues. An appeal on the merits can challenge the validity of the debt, the finding of breach, and the amount owed. A later appeal of an order confirming a sale can challenge whether the sale was actually proper. There is little threat of overlap. In fact, the Fifth Circuit *requires* parties to appeal separately the judgment of foreclosure and the subsequent order confirming the sale. In the Fifth Circuit, which relied on the Supreme Court cases and one Seventh Circuit decision cited above, a party who follows the majority's course, appealing only after confirmation of a sale, is actually *barred* from challenging the merits of the judgment of foreclosure. See *Citibank*, 645 F.2d at 338; see also *Central Trust Co. of New York v. Peoria, Decatur & Evansville, Ry. Co.*, 118 F. 30, 32 (7th Cir. 1902) (appeal from order confirming sale could not challenge merits of underlying foreclosure).

This reasoning is consistent with our decision in *MERS v. Estrella*, which held that an order *denying* confirmation to a judicial sale is not a final decision when the district court or-

ders another sale. 390 F.3d at 523–24; see also *Levin v. Baum*, 513 F.2d 92, 94 (7th Cir. 1975) (Stevens, J.) (order vacating prior confirmation of sale and ordering new sale was not appealable). Such an order does not end the "separate law-suit" in the post-judgment proceeding and thus cannot be appealed immediately. But that does nothing to undermine the finality of the earlier judgment.

With these principles in mind, I turn to the specific issues that have persuaded the majority that we do not yet have a final judgment here. The specialized vocabulary of mortgage foreclosure should not distract us from the essential sub-stance of the issues. These possible post-judgment issues pose no greater threat to finality than others that do not de-feat the finality of judgments on the merits.

B.  *Redemption and Reinstatement Practice*

The majority first contends the judgment here is not final because there is a chance the sale will never take place. Illi-nois law and the terms of this judgment allowed Townsend time to reinstate or redeem his mortgage before a sale could take place. The statutory options of reinstatement and re-demption should not defeat finality. They merely spell out the terms of a post-judgment settlement the plaintiff is re-quired to accept. By paying the amount of the judgment, the defendant avoids the sale and satisfies the judgment, *just as any other losing defendant may*: by paying the plaintiff the amount of the judgment.

For reinstatement, the defaulting borrower must cure the default. That requires paying all amounts due under the note (such as accrued interest, late fees, attorney fees) except the remaining principal. 735 ILCS 5/15-1602. The effect is to

cure prior breaches, to make the lender whole, and to rein-
state the mortgage as if the default had not occurred. Re-
demption, on the other hand, requires payment of all princi-
pal and interest due as of the date of the judgment (which
can include the entire principal, accelerated by the default),
as well as the lender's costs and fees and interest. 5/15-
1603(d). The effect is to make the lender whole, satisfying the
note and leaving the lender with no further interest in the
property. Illinois law expresses a preference for resolving
mortgage disputes through redemption and reinstatement as
opposed to sale. A foreclosure sale cannot occur until the
time limits for both have expired. 5/15-1507(b).

These rights are far from new, so it's hard to see why
their existence should only now be discovered to change our
jurisdictional calculus. We reasoned in *In re Sorenson*, 77 F.2d
166, 167 (7th Cir. 1935), for example, that redemption was
among the matters incident to the execution. The possibility
of redemption did not defeat finality of a judgment of fore-
closure.

Given the limited financial resources of most defaulting
borrowers, these statutory rights are not exercised often.
They usually serve only to delay the sale and thus the execu-
tion of the already-final judgment. See Michael H. Schill, *An
Economic Analysis of Mortgagor Protection Laws*, 77 Va. L. Rev.
489, 496–97 (1991); George M. Platt, *Deficiency Judgments in
Oregon Loans Secured by Land: Growing Disparity Among Func-
tional Equivalents*, 23 Willamette L. Rev. 37, 49 (1987). As a
matter of law, of course, we must allow for these possibilities
in each case. Nevertheless, as far as I know, the always-
present possibility that the defendant might moot an appeal
by paying the amount due on the judgment has never before

been deemed to destroy the finality of the underlying judgment.

The majority disagrees, relying on general language in the Supreme Court's decision in *Budinich*. Ante at 7. But *Budinich* did not say that the mere prospect that a *party* might moot a case defeats finality of an otherwise final judgment. The Supreme Court said: "A question remaining to be decided after an order ending the litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." 486 U.S. at 199. That comment is best understood as applying to a remaining issue to be decided *by the district court*. The *Budinich* language could not extend to the prospect that a party might choose to take some action that would render moot a pending appeal or even the case itself. In virtually any civil case, a losing defendant may choose to comply with the judgment against him, or both parties may come to a post-judgment settlement. Either way an appeal may become moot. But if that possibility defeated finality, we would have jurisdiction over very few civil appeals.

The statutory rights of redemption and reinstatement merely codify this commonplace option of complying with a judgment. They do not change the essential finality of the judgment of foreclosure.[2]

---

[2] Beyond these doctrinal difficulties, there is also no logical connection between the time these rights expire and the time for appeal the majority has identified: after the sale is confirmed. If these rights expire before the sale—and in this case they have long since expired—why must the parties wait until the sale is confirmed before they can appeal? Why wouldn't the judgment transform into an appealable judgment the moment these periods end? Or, given the special right to redeem for certain

C. *Confirmation of Sale Process*

When properly understood, the need to carry out the court-ordered sale and to confirm the result under 735 ILCS 5/15-1508(b) also does not undermine finality. The sale is the key step in executing the judgment on the merits. The need for a court order confirming the sale presents an opportunity to challenge the sale itself but not the underlying foreclosure judgment. This step in the execution does not undermine the finality of the judgment of foreclosure.

As noted above, in *Whiting v. Bank of United States*, 38 U.S. (13 Pet.) 6, 15 (1839), the Supreme Court expressly rejected the contention that the decree (judgment) of foreclosure ordering a sale would be "deemed final only after the return and confirmation of the sale by a decretal order of the Court." We said essentially the same thing in *Sorenson*, concluding that a "decree or judgment [of foreclosure] is none the less final because of the things thereafter to be done to give it effect," and we treated "the sale, report of sale, deficiency decree" as "incident to the execution of the decree." 77 F.2d at 167.

The Ninth and Fifth Circuits agree. See *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1101 (9th Cir. 1998) (holding foreclosure judgment was final even though it left "the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sales"); *Citibank*, 645 F.2d at 337–38 (holding that issues relating to mer-

---

residential foreclosures for 30 days *after confirmation of a sale*, see 735 ILCS 5/15-1604(a), when, exactly, does the judgment become final so that the time to appeal begins to run? The lack of answers to these questions highlights the uncertainty caused by the majority's approach to finality.

its of foreclosure judgment could not be appealed after confirmation of sale because earlier order had been final).

Nothing about the Illinois confirmation of sale proceeding suggests that it has a greater impact on the merits. In Illinois, confirmation of sale proceedings are designed to determine whether the sale was fair. 735 ILCS 5/15-1508(b). They are initiated by a separate post-judgment motion, *id.*, and are part of the process to satisfy the judgment of foreclosure. See 5/15-1508(f).

Under the Illinois statutes and case law, issues relating to the fairness of a foreclosure sale should not overlap with issues about whether it was proper to enter the judgment of foreclosure and to order the sale in the first place. After a foreclosure sale, the issue is not whether the judgment of foreclosure was correct but instead whether the sale was conducted properly. The court must "enter an order confirming the sale" unless a party establishes that the sale was invalid because "(i) a notice required in accordance with [735 ILCS 5/15-1507(c)] was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done." 735 ILCS 5/15-1508(b).

The first three grounds for avoiding confirmation of a sale plainly have nothing to do with the underlying merits. Because confirmation of sale proceedings present different issues, "there will be no judicial diseconomy if they are considered in a separate appeal." See *Parks*, 753 F.2d at 1402; see also *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 126 (1945) ("[A] judgment directing immediate delivery of physical property is reviewable … because it is independent of, and unaffected by, another litigation with which it happens to be entangled."). In the typical case where the defendant

demonstrates the sale is unfair, the remedy is simply to vacate the sale and to order a new one, not to set aside the foreclosure. See *Estrella*, 390 F.3d at 523–24 (remedy for unfair sale was to order second sale).

But what about the fourth ground, that "justice was otherwise not done"? That language could be read broadly to invite a judge to revisit the merits and to set aside not only the sale but also the underlying judgment of foreclosure. That prospect might weigh against finality, but both we and the Illinois Supreme Court have rejected such a broad reading of the statute.

In *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1029 (7th Cir. 2006), a district court had refused to confirm a foreclosure sale under Illinois law on exactly this broad theory. We reversed, noting "the confusion that would be injected into the law were the confirmation of foreclosure sales a matter of judicial whim." The Illinois Supreme Court is actually the authoritative voice on this point of law, and it has explained: "At this stage of the proceedings, objections to the confirmation under section 15-1508(b)(iv) cannot be based simply on a meritorious pleading defense to the underlying foreclosure complaint." *Wells Fargo Bank, N.A. v. McCluskey*, 999 N.E.2d 321, 328 (Ill. 2013). The state court explained that "the justice provision under section 15-1508(b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, *in rare cases*, the underlying judgment, based on traditional equitable principles." *Id.* at 329 (emphasis added).

In recognizing this "rare" possibility, the Illinois court made clear that the justice provision in 15-1508(b)(iv) imposes a much more restrictive standard than the general standard for vacating default judgments under 735 ILCS 5/2-

1301(e). To vacate the underlying judgment of foreclosure, it is not enough under 15-1508(b)(iv) for the defendant to "have a meritorious defense to the underlying judgment." *McCluskey*, 999 N.E.2d at 329. The defendant-borrower must establish that "justice was not otherwise done because either the lender, *through fraud or misrepresentation*, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise *prevented* from protecting his property interests." *Id.* (emphases added).

The state court's authoritative interpretation of the statute shows that an objection to confirmation of a sale because "justice was otherwise not done" on the merits of the suit is analogous to a motion by a losing defendant under Federal Rule of Civil Procedure 60(b). Like the justice clause in 15-1508(b)(iv), Rule 60(b)(3) permits a party facing an already final adverse judgment to ask a court to vacate that judgment for reasons of "fraud …, misrepresentation, or misconduct by an opposing party."

The possibility that a defendant might seek to vacate a judgment under Rule 60(b) does not affect the finality of the judgment, of course. See Fed. R. App. P. 4(a)(4)(A)(vi), (B)(i); Fed. R. Civ. P. 60(c)(2); *Stone v. INS*, 514 U.S. 386, 401–03 (1995) ("motions that do not toll the time for taking an appeal give rise to two separate appellate proceedings that can be consolidated"). In Illinois foreclosure cases, the "justice" clause as interpreted by the Illinois Supreme Court allows essentially the same sort of relief from a final judgment. This method goes by a different name, but the superficial differences should not distract us from the lack of an effect on fi-

nality. For purposes of finality under 28 U.S.C. § 1291, an Illinois confirmation of sale proceeding does not affect the finality of the underlying judgment on the merits.

D. *Deficiency Judgments and Pre-Judgment Interest*

The majority's final concern is that the amount of a deficiency judgment and the amount of interest due under the judgment have not yet been ascertained. This reasoning again confuses the underlying judgment on the merits with the details of executing that judgment.

1. *Deficiency Judgments*

By establishing the amounts owed and the priorities of lienholders, the judgment of foreclosure makes clear how the proceeds of sale will be divided among those with interests in the property. The judgment of foreclosure tells the mortgagor-defendant exactly how much money he must pay the mortgagee-plaintiff to resolve the lawsuit. Townsend is on the hook for $143,569.65, plus post-judgment interest. He owes that amount whether all the money comes from the proceeds of the sale or some also comes from payments toward a deficiency judgment. If the sale proceeds come up short of the amount owed, the judgment *requires* entry of a deficiency judgment against Townsend: "If the proceeds of the sale are not sufficient to satisfy those sums due the Plaintiff, the court *shall* enter a Personal Deficiency Judgment pursuant to 735 ILCS 5/15-1508(e)."

The majority contends that the extent of damages owed by Townsend remains unquantified because the district court has the power to reduce the deficiency judgment Townsend owes following sale if the sale was unfair and the auction produced too low a sales price. Ante at 7–9. With re-

spect, that argument misreads Illinois law. Some states allow such reductions, but not Illinois. See *Illini Federal Savings & Loan Ass'n v. Doering*, 516 N.E.2d 609, 612 (Ill. App. 1987). Under Illinois law, the deficiency judgment must be "in an amount equal to the difference between the sale price and the debt sued upon." *Id.* at 611. The *Illini Federal* court held that there was no "statutory authority for setting a deficiency judgment independent of the sale price of the property." *Id.* Nor was there any "provision in Illinois case law for the court, under its equity powers, to set a deficiency judgment based on a judicial determination of value rather than the sale price of the property." *Id.* at 612.

An Illinois court reviewing a sale therefore lacks discretion to deny or alter the amount of the deficiency judgment if it thinks the sales price was too low. See *id.* ("The procedure followed by the trial court in setting aside the deficiency judgment to conduct a hearing to determine the property's value for purposes of setting a new deficiency amount was outside the court's authority in supervising judicial sales."); *Bank of Benton v. Cogdill*, 454 N.E.2d 1120, 1126 (Ill. App. 1983) ("[T]he entry of such a [deficiency judgment] was mandatory … and the court lacked discretion to deny the plaintiff relief on equitable grounds."). Illinois law simply does not give trial courts the power the majority believes they have to exercise discretion on the *amount* of a deficiency judgment.

That does not mean a court is powerless if it thinks a sale was unfair. Although "mere inadequacy of price alone is not sufficient cause for setting aside a judicial sale," a court can set aside the sale based on "mistake, fraud, or violation of duty by the officer conducting the sale." See *Illini Federal*, 516

N.E.2d at 611; see also *Resolution Trust Corp v. Holtzman*, 618 N.E.2d 418, 425 (Ill. App. 1993) (Illinois legislature "did not intend to impose upon the court the kind of inquiry provided in the Uniform Commercial Code that all sales 'must be commercially reasonable'"). But the remedy is only to order a new sale, not to deny or reduce a deficiency judgment. "[T]here is a significant difference between the court setting aside a sale to order a new sale at a minimum price and the court setting aside a deficiency judgment to establish a new deficiency amount based on the court's determination of value in the absence of a sale." *Illini Federal*, 516 N.E.2d at 612.

The majority resists *Illini Federal*'s prohibition on courts exercising discretion over deficiency judgments on two grounds. First, the majority argues that *Illini Federal* itself recognized an ability to alter deficiency judgments in the presence of "fraud or irregularity in the foreclosure proceeding." Ante at 9, quoting *Illini Federal*, 516 N.E.2d at 611. But this is not so. The court in *Illini Federal* did not contradict itself, as the majority seems to think. Instead, as noted above, "fraud or irregularity" permit the court to consider prices other than the price at which the property was sold but only to determine whether to deny confirmation of the sale and order a new sale, not to deny or reduce a deficiency judgment. *Illini Federal* itself rejected just such an attempt to stretch a court's recognized power to refuse confirmation into a new power to deny or reduce a deficiency judgment. *Id.*; accord, *Nationwide Advantage Mortgage Co v. Ortiz*, 975 N.E.2d 178, 186–87 (Ill. App. 2012); *NAB Bank v. LaSalle Bank, N.A.*, 984 N.E.2d 154, 161–62 (Ill. App. 2013).

Second, the majority suggests that even though *Illini Federal* held that courts lack discretion to reduce or deny deficiency judgments, later statutory changes have undermined that holding. Closer examination shows this is not correct. Illinois recodified its mortgage law in 1987 to "integrate into one statute as much of the law of mortgage foreclosure as possible." Steven C. Linberg & Wayne F. Bender, *The Illinois Mortgage Foreclosure Law*, Ill. B.J., Oct. 1987, at 800, 800. Whether a deficiency judgment is mandatory or discretionary is a rather important feature of mortgage law. None of the statutory language or case law cited by the majority suggests that Illinois has made what would be a striking change in the law.

The current statute on deficiency judgments begins with the phrase "the court *shall* enter a personal judgment for deficiency." 735 ILCS 5/15-1508(e) (emphasis added). The majority nevertheless justifies its interpretation by pointing to the use of some discretionary language, like the word "may," in the statute. This use of the word "may" is neither new nor a harbinger of the new discretionary relief the majority has found. Prior versions of the statute, including that applied in *Illini Federal*, also said that a plaintiff "may" obtain a deficiency judgment. See, e.g., Ill. Ann. Stat. ch. 110 ¶ 15-112 (1985) ("[I]f the sale of the mortgaged premises fails to produce a sufficient amount to pay the amount found due in the judgment … the plaintiff *may* have a personal deficiency judgment… .") (emphasis added); Ill. Ann. Stat. ch. 95, § 17 (1950) ("[A] decree *may* be rendered for any balance of money that may be found due to the complainant over and above the proceeds of the sale or sales … .") (emphasis added). These uses of "may" make perfect sense even without a grant of discretion to deny or reduce a deficiency judgment.

Not every foreclosure plaintiff will seek a deficiency judgment, nor will it always be necessary to enter one—after all, the property could be sold for more than the amount owed.

Even more to the point, no one else has noticed the new and dramatic change found by the majority. Following the enactment of the new statute, Illinois courts continue to cite the principles of *Illini Federal* favorably. See *Resolution Trust*, 618 N.E.2d at 424–25 ("Even after the 1987 amendment, courts have cited *Illini Federal* with approval."). Commentators—both at the time the statute was first passed and now—have made clear that neither statute nor case law has granted courts discretion over deficiency judgments. See Eric T. Freyfogle, *The New Judicial Roles in Illinois Mortgage Foreclosures*, 19 Loy. U. Chi. L.J. 933, 933, 937 (1987) ("Illinois retained the requirement of judicial foreclosure sale and refused to impose any limits on post-sale deficiency judgments."); 2 Michael T. Madison et al., The Law of Real Estate Financing § 22:4 ("Illinois does not restrict the recovery of a deficiency judgment by statute apart from restricting a deficiency following a consensual foreclosure decree."); *id.* § 12:73.

It is no surprise, then, that the majority has not found a single case where an Illinois court has recognized such discretion over a deficiency judgment. In view of today's decision, though, we should expect some borrowers to seek such discretionary relief, albeit without any substantive guidance from our court on how trial courts should exercise this newfound discretion.

Since Illinois law actually denies trial courts discretion over deficiency judgments, all parties can expect that any deficiency judgment—whether ordered following the first

attempted sale or a later sale—will equal the amount due
under the judgment less the net proceeds received from the
sale. We cannot know now the precise amount of any defi-
ciency judgment, but that detail of execution does not affect
finality if the amount can be mechanically calculated. A need
to do arithmetic does not defeat finality. See *Parks*, 753 F.2d
at 1401–02 (finding "ministerial"—meaning "mechanical and
uncontroversial"—the need to calculate the specific amount
owed to each plaintiff even when the plaintiffs later had to
prove with receipts how much was owed); accord, e.g., *Her-
zog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1064
(7th Cir. 1992) ("We think the original judgment was final,
because the process of reducing it to a sum certain was in-
deed mechanical."); *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d
1097, 1101 (9th Cir. 1998) (holding foreclosure judgment was
final even though it left "the actual amount of the deficiency
judgment to be determined at a fair value hearing following
the judicial foreclosure sales").

## 2. *Interest Calculations*

The majority's suggestion that "pre-judgment" interest is
not yet determined is similarly flawed and just misreads the
district court's judgment. Even calling this interest "pre-
judgment" begs the question by assuming that the calcula-
tion of post-judgment interest begins with the sale rather
than the judgment on the merits. But the face of the judg-
ment here makes clear that the *pre*-judgment amount of ac-
crued interest has already been calculated and awarded at
the contract rate in the note. The judgment then provides for
post-judgment interest: HSBC is entitled to the "Total Judg-
ment Amount as found above, together with interest at the
statutory judgment rate *after entry of this judgment*." ¶ 16.

The calculation of post-judgment interest is simpler and certainly does not affect finality. See *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994); cf. *Student Loan Marketing Ass'n v. Lipman*, 45 F.3d 173, 175–77 (7th Cir. 1995) (failure to calculate pre-judgment interest defeats finality). Post-judgment interest accrues at the statutory rate under 28 U.S.C. § 1961, and its calculation is a matter of arithmetic. The need to calculate both the amount of any deficiency judgment and post-judgment interest thus should not prevent the district court's judgment of foreclosure from being a final judgment.[3]

More generally, on this issue of appellate jurisdiction, where predictability and clarity are especially prized, we should stick with the long-settled difference between a judgment on the merits and the execution of that judgment. We should exercise our jurisdiction and decide the merits.

III.    *Summary Judgment for HSBC*

Because I believe we have jurisdiction, I turn briefly to the merits of the appeal. Townsend argues that HSBC was not entitled to summary judgment because it failed to establish that the Illinois mortgage foreclosure statute authorized it to bring the foreclosure action. To the extent the argument is framed in terms of prudential or statutory standing, the Supreme Court clarified in *Lexmark Int'l, Inc. v. Static Control*

---

[3] The majority's approach to interest also creates a new uncertainty with significant economic consequences given today's interest rates. When does the interest calculation shift from the higher, pre-judgment contract rate to the lower, post-judgment statutory rate: with the judgment of foreclosure or the confirmation of sale? Which is the "entry of the judgment" under 28 U.S.C. § 1961? See generally *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990).

*Components, Inc.*, that whether a particular plaintiff has a cause of action under a statute no longer falls under the rubric of standing. See 572 U.S. —, 134 S. Ct. 1377, 1386–88 & n.4 (2014) (finding it misleading when courts label the question whether a given plaintiff has a cause of action under a statute as being one of prudential or statutory standing); see also *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 733–34 (7th Cir. 2014) (following *Lexmark*).

It is clear from the record that HSBC has constitutional standing, an issue that could not be waived. Townsend's other argument—that HSBC failed to establish that the Illinois statute permits a party in its position to seek judicial relief—was waived. Townsend made no attempt during the summary judgment proceedings to show that HSBC was the wrong party to bring suit.

Even when a plaintiff's motion for summary judgment goes unopposed, a plaintiff is not entitled to summary judgment unless it establishes that there is no issue of material fact with respect to the elements it must prove and that it is therefore entitled to judgment as a matter of law. See, e.g., *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601–02 (7th Cir. 2015); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). Under Illinois law, though, the defendant bears the burden of proving that the statute does not permit the plaintiff to foreclose on the mortgage. A defendant waives the argument if it is not made prior to entry of the judgment of foreclosure. See *U.S. Bank, N.A. v. Avdic*, 10 N.E.3d 339, 352 (Ill. App. 2014) (plaintiff need not allege facts establishing that it is a party that can sue under the statute in order to win a judgment of foreclosure); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 940 N.E.2d 118, 123 (Ill.

App. 2010). Townsend's failure to raise this non-jurisdictional issue in the district court means that he waived it. See *Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 153 (7th Cir. 1992); see also *C & N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014) (holding that defendant can waive arguments even if they might have undermined plaintiff's prima facie case).

Accordingly, I would affirm the judgment of the district court. I respectfully dissent from dismissal of the appeal for lack of appellate jurisdiction.