CENTRAL TRUST CO. OF NEW YORK v. PEORIA, D. & E. RY. CO. et al.

CHAMBERLIN v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Seventh Circuit. October 19, 1900.)

No. 667.

RAILROADS—SUITS TO FORECLOSURE MORTGAGES—INTERVENTION BY STOCK-HOLDER.

Where it is admitted that the mortgage indebtedness of a railroad company is greater than the value of its property, a stockholder who was an active party defendant in suits to foreclose a second mortgage, in which receivers were appointed, and who made no objection to the administration of such receivers until three years after decrees of foreclosure had been rendered in such suits, has no such interest in the property as will justify the court after that time in entertaining a petition of intervention by him attacking the validity of the proceedings on the ground that the expenditures for betterments made by the receivers long previously were unnecessary, and were made through fraud and collusion between the receivers and first and second mortgage bondholders, for the purpose of causing a default in the payment of interest, which would bring about a foreclosure of the first mortgage.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Charles A. Boston, for appellant.

W. S. Opdyke and Bluford Wilson, for appellees.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

GROSSCUP, Circuit Judge, delivered the opinion of the court as follows:

This appeal is from an order of the Circuit Court (83 Fed. 910) denying the appellant leave to file an intervening petition. The petition, with its exhibits, is voluminous, but the essential facts lie within a very narrow compass.

The Peoria, Decatur and Evansville Railway Company, a consolidated railway company of Indiana and Illinois, was the mortgagor of divisional first mortgages executed in 1880, to secure an issue of bonds, one covering the part of the road from Evansville, Indiana, to Mattoon, Illinois; and the other covering the part of the road from Mattoon, Illinois, to Pekin, Illinois. There was, also, a

second mortgage to secure an issue of bonds, covering the entire property, including both divisions.

January, 1894, suits were brought by the railway company in the United States Courts in both Indiana and Illinois against the trustees named in the mortgage, to preserve the property, and secure its proper disposition among the creditors, and upon the same day receivers were appointed, one of them being still in possession of the property.

December '94 cross-bills were filed by the trustees under the second mortgage, praying for foreclosure, and to these cross-bills the existing receivership was extended. Certain stockholders of the company, including the appellant, were made parties to this cross-bill, and defended against it upon the theory that the court was without jurisdiction to foreclose the mortgage, and that the second mortgage and the bonds thereby secured were fraudulent.

March, 1897, a decree was entered in the Illinois suit, adjudging that the bonds and the second mortgage were valid, and foreclosing the same, and a few days later a similar decree was entered in the Indiana suit. No appeals from these decrees were prosecuted.

January 27th, 1900, nearly three years after the entry of the above decrees, the intervening petition of appellant under consideration was presented.

The petition, in substance, sets forth, that, pending foreclosure, a committee of first mortgage bondholders issued a plan of reorganization, under which the appellant deposited his stock. Prior to this the second mortgage bondholders had issued a plan of reorganization, the fairness of which is undisputed, but which, it seems, did not become operative. Subsequently to the issuance of the first mortgage bondholders plan, and in order to raise necessary cash, the second mortgage bondholders committee issued an amended plan, under the terms of which the second mortgage bondholders were given the following option: (a) To sell their certificates to the Colonial Trust Company, at fifteen per centum of the par value of the principal thereof, in cash; receiving back any cash paid to the committee under the original plan; or (b) to receive from the Trust Company, in exchange for such certificate, fifty per centum of the par value of the face thereof, in the new common stock to be issued upon reorganization, receiving back the cash paid under the original plan; or (c) to receive from the Trust Company fourteen per centum of the par value of such certificate in cash, and to receive back any cash paid to the committee under the original plan, the Trust Company, in that event, assuming the obligation of such certificate-holder to the committee.

It is averred that this plan was in the interest of an undisclosed principal; that, by want of diversity of citizenship, the foreclosure suit on behalf of the second mortgage bondholders was seen to be futile, because no good title could thereunder be acquired; that, up to the year 1897 the earnings of the road were sufficient to meet the interest coupons on the first mortgage bonds; that, in that condition of affairs, no foreclosure could be had, at the suit of the first mortgage bonds; but that such influences were brought about, that the committee of first mortgage bondholders abandoned its plan of

reorganization, and agreed, in the interest of the second mortgage bondholders, to create such a state' of affairs in the finances of the road, that there would be a default upon the interest coupons of the first mortgage bonds, whereby there might be a foreclosure at the suit of the first mortgage bondholders trustees. .

Taking the averments of the intervening petition at their utmost meaning, it is charged that, in pursuance of this conspiracy, between the parties conducting the first mortgage bondholders suit, the second mortgage bondholders committee, and the receivers of the road, the receivers proceeded to make unnecessarily large expenditures out of their income for betterments; that there was much relaying of new rails; that the road was reballasted; that wooden bridges and long trestles were supplanted by iron bridges with stone abutments; and that these extraordinary improvements brought about the purposed deficit, leaving the interest due to the first mortgage bondholders unpaid. It is insisted that, upon these facts, this is a case of a mortgagee improving the mortgagor out of his premises.

While the court should never close its ear to a charge of fraud, brought in apt time by an injured party, upon a statement of premises that reasonably create suspicion, it is equally important that judicial proceedings should not be unfairly used to unsettle business doings, past and gone; or subject those, who participated in such doings to the menace of a judicial holdup.

The Circuit Court, in our judgment, properly refused to open up, at the instance of the appellant, an inquiry so intricate, uncertain, and burdensome as the intervening petition contemplates. The appellant was a party to the foreclosure proceedings, and as such, had access to the doings of the receiver; but, during the time the expenditures complained of were in progress, took no proper step to arrest them. He has remained uncomplaining for nearly three years since. He is a stockholder having no interest, except in the value of the equity of redemption, and it is not shown that there would, under a different administration by the receivers, have remained a more valuable equity of redemption. It is admitted, indeed, that the road, even as now improved, is worth much less than the aggregate amount of the first and second mortgage bonds. The appellant shows no interest that entitles him to initiate the proposed proceedings.

The decree of the Circuit Court must be affirmed.