CENTRAL TRUST CO. OF NEW YORK v. PEORIA, D. & E. RY. CO. et al.

CHAMBERLIN v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 756.

1. RAILROAD MORTGAGES—FORECLOSURE—DECREE—COLLATERAL ATTACK.
 Questions relating to the validity of a decree directing foreclosure of a railroad mortgage cannot be raised by objections to the confirmation of the sale.

2. SAME.
 Where a railroad stockholder objected to confirmation of the sale of the road under foreclosure on the ground that the purchaser bought for a trust company holding second mortgage bonds, instead of for another company which had formed a reorganization agreement recognizing the stockholders, but failed to show that that fact resulted in less being obtained for the property at the sale, and did not show the value of the property, or that less than the full value was bid, or that after payment of the first mortgage any surplus would be left for the second mortgage bondholders or other creditors or stockholders, or that he ever accepted the plan alleged, his objections were untenable.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Edward B. Whitney and Wm. W. Baldwin, for appellant.

J. M. Dickinson and Blewett Lee, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. November 18, 1899, a decree was entered foreclosing a first mortgage and ordering a sale of the Peoria, Decatur & Evansville Railroad. After publishing notice as directed, the master sold the road on February 6, 1900, to Adrian H. Joline for $1,586,000. February 12, 1900, the master filed his report of sale. April 21, 1900, appellant filed objections to confirmation, substantially as follows: Appellant, not a party to the foreclosure suit, but a stockholder in the railroad company, on behalf of himself and all other stockholders who might desire to take the benefit of his objections, charged that the purchase was made by Joline under an agreement between the Central Trust Company, trustee in the first mortgage, and the Colonial Trust Company, owner of a large amount of second mortgage bonds of the railroad company, whereby the Colonial Company, after paying the first mortgage bonds, was to be permitted to reorganize upon the plan proposed by the Colonial Company, which contemplated that the Colonial Company should procure to be issued upon the faith of the reorganized property first mortgage bonds and preferred stock involving the annual payment of interest and dividends of not more than $190,000, and the issue of common stock of the reorganized company to the extent of $3,000,000, par value, and the disposition of the first mortgage bonds and of the preferred stock in such manner as the Colonial Company should see fit, and the issue of so much of the common stock as should be re-

¶ 1. See Mortgages, vol. 35, Cent. Dig. §§ 1470, 1533.

quired for the purpose to those second mortgage bondholders who
had sold their bonds to the Colonial Company for 50 per cent. of
the face value of the principal thereof, payable in the common stock
of the reorganized company, and the division of the remainder of
the common stock among the Colonial Company and other assent-
ing second mortgage bondholders in the proportion of three parts to
the Colonial Company and one part distributively to the assenting
second mortgage bondholders; that this proposed reorganization ex-
cluded from participation therein all stockholders and all other cred-
itors of the existing railroad company; that the plan was a collusive
agreement between the trustee of the first mortgage bonds and the
Colonial Company to acquire for the sole benefit of the Colonial
Company and the assenting second mortgage bondholders the prop-
erty of the Peoria, Decatur & Evansville Railroad Company; and
that the method by which the reorganization was to be accomplished
was a fraud upon the rights of the railroad company and its several
creditors who were not parties thereto, and upon the stockholders,
for these reasons: (1) The decree of foreclosure and sale was need-
lessly brought about through collusion of the Central Company and
the Colonial Company, by procuring to be applied to the unneces-
sary improvement of the road all money earned by the receiver and
not required for the ordinary or for the reasonable maintenance and
repair of the property, whereby money properly payable on account
of the interest on the first mortgage bonds, the payment of which
would have prevented the entry of the foreclosure decree, was ap-
plied by the receiver to the betterment of the security. (2) The Cen-
tral Company, represented by Joline, agreed with the Colonial Com-
pany, represented by its solicitor, David Willcox, that the purchase
of the property by Joline should actually be for the benefit of the
Colonial Company, whereby any competition between purchasers at
the sale was prevented and a diminished amount realized for the prop-
erty. And the Central Company advanced to Joline the money nec-
essary to make the deposit with the master required by the decree
as an advance upon his bid. (3) A large majority of the first mort-
gage bondholders were represented by a committee of holders who
had entered into a written contract with the Central Company for
depositing with that company first mortgage bonds, second mort-
gage bonds, and stock of the railroad company under a plan of re-
organization known as the "First Mortgage Committee's Plan."
Under this plan the benefit of the reorganization was offered to the
first mortgage bondholders, the second mortgage bondholders, and
the stockholders of the present company; and no creditor of the
company interposed any objection thereto. The Central Company
continued to receive deposits of securities under this plan up to and
including the 22d day of January, 1900. The sole representative
of the Central Company at the sale was Joline, and it was his duty
to use his best endeavors to acquire the property for the purpose of
reorganization under the first mortgage committee's plan, which pre-
served the interests of all classes of security holders who were willing
to join therein. In pursuance of the agreement hereinbefore referred
to, Joline bid for the purpose of enabling the Colonial Company to

reorganize under its own plan as hereinabove set forth, and the so-called first mortgage committee's plan was suffered to be, and was, a cloak for the design to purchase the property for the benefit of the Colonial Company, and was calculated to deceive and mislead, and did deceive and mislead, other security holders of the railroad company. This appeal is from an order overruling appellant's objections and confirming the sale.

The first ground relates to the validity of the decree. The question cannot be raised on objections to the sale. Appellant probably realized this when on January 30, 1900, he filed his intervening petition, in which he sought to open up the decree and to be let in to defend. For reasons stated in Central Trust Co. v. Peoria & D. E. Ry. Co., 43 C. C. A. 613, 104 Fed. 418, his petition was stricken from the files.

In his second and third grounds, appellant fails to exhibit any valid objection to the confirmation of the sale. If Joline bought for the Colonial Company, instead of for the Central Company, how was appellant harmed? He does not show how much less was realized at the sale than would have been if Joline had bid on behalf of the Central Company, nor the value of the property, nor that less than the full value was bid, nor that, after payment of the first mortgage, any surplus would be left for the second mortgage bondholders and other creditors, to say nothing of the stockholders, nor that there is any probability of a better bid at another sale, nor that he was ignorant of or misled by the action of the Central Company, nor that he applied for a postponement of the sale to enable him to get the stockholders together to protect their interests at the sale. Appellant does not even allege that he accepted the offer in the written contract between the Central Company and the first mortgage bondholders whereby the stockholders were to be included in a reorganization plan. But if he had alleged and proven the fact, it might show a cause of action against the Central Company and the first mortgage bondholders for damages, but certainly it would furnish no reason why the circuit court should retake the property and sell it again, as the court would be compelled to do, under a decree that is unassailable by appellant.

The order is affirmed.