HAMILTON, Circuit Judge;
dissenting.
I view the district court’s judgment of' foreclosure as final under 28 U.S.C. § 1291. Rather than dismiss the appeal, I would affirm on the merits. Under long-established finality principles, a foreclosure judgment is final if it (a) settles the merits and the total amount of the debt, (b) identifies the property to be sold to satisfy the judgment, and (c) orders the priority of competing claims to the sale proceeds. See, e.g., Whiting v. Bank of the United States, 38 U.S. (13 Pet.) 6, 15, 10 L.Ed. 33 (1839), and cases following it.
The judgment of foreclosure here does all of those things. All that .remains in this litigation is executing that judgment by judicial sale of the property securing the debt and distributing the sale proceeds. For two centuries American appellate practice has distinguished between a judgment on the merits and later matters of execution, holding that open issues involving execution do not defeat finality of the underlying judgment on the merits. That settled approach to finality works. We should not upset it with the novel approach of uncertain scope adopted by the majority.
I agree with my colleagues, though, thát Federal Rule of Civil Procedure 54(b), 28 U.S.C. § 1292, and the doctrine announced in Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), do not authorize this appeal. Our disagreement is about whether the need to execute the judgment of foreclosure by carrying out the court-ordered sale prevents an immediate appeal of the judgment of foreclosure under traditional § 1291 principles.
Part I of this opinion explains the general rule: a judgment resolving all claims on the merits is final and appealable even if it remains to be executed with the court’s assistance. That remains true even if a second appeal regarding the execution is possible. One specialized application of that general rule is that a judgment of foreclosure that resolves the amount of the debt and orders sale of the mortgaged property is a final judgment. The Supreme Court has followed this approach to mortgage foreclosures since the earliest days of our Republic. Prior decisions of' this and other circuits have long followed this approach.
With fair warning to readers, Part II digs into the weeds of the execution process under Illinois foreclosure law that have persuaded my colleagues that this judgment of foreclosure is not yet final. If we look past the jargon of mortgage cases, we see that the statutory provisions for redemption and reinstatement aré merely specialized instances of the right any defendant has to satisfy a judgment voluntarily before it is executed. Potential disputes about the fairness of a judicial sale do not undermine finality here any more than do analogous disputes in other proceedings to execute judgments. The routine arithmetic needed to calculate the amount of a deficiency judgment or post-judgment interest also does not undermine finality when those calculations follow mechanically from a judgment that determines the total amount owed and the priorities of creditors.
Finally, Part III explains briefly why the district court did not err by granting *782 summary judgment in favor of HSBC on the merits of its claim against appellant Townsend, who defaulted on his residential mortgage loan.
Before diving into the details, though, I’ll try to explain why this issue of appellate jurisdiction is worth an admittedly lengthy dissent. What difference does it make whether a borrower in Townsend’s position must wait longer to appeal as long as he is able to appeal in the end?
First, the majority’s novel decision upends about two centuries of federal precedent and practice on finality for purposes of appeal. Courts applying § 1291 and its cousins have recognized the difference between a judgment on the merits and the decisions needed to execute that judgment. The distinction between these phases of the litigation is established and-familiar. It works.
The majority’s decision adopts an uncertain standard that collapses that distinction, at least for mortgage foreclosures. In the majority’s view, it is not enough for the merits of a dispute to be finally resolved. The majority also requires that all issues relating to execution be resolved in the district court before the underlying judgment on the merits is appealable. This reasoning either (a) commits our circuit to using different finality rules when we consider mortgage foreclosures, or (b) signals that appeals from other judgments that have also long been considered final will need a fresh look.
In either case, the majority’s approach will impose confusion, uncertainty, and expense where the law is not broken and needs no fixing. See Republic Natural Gas Co. v. Oklahoma, 334 U.S. 62, 69, 68 S.Ct. 972, 92 L.Ed. 1212 (1948) (“The considerations that determine finality are not abstractions but have reference to very real interests — not merely those of the immediate parties, but more particularly, those that pertain to the smooth functioning of our judicial system.”). Even if future cases limit the majority’s reasoning to mortgage cases, the practical effect will still be substantial. Federal district courts handle thousands of mortgage foreclosure cases every year, roughly ten per district judge per year. See Judicial Business of the United States Courts, Annual Report of the Director tbl. C-2 (2014).
Adding to the uncertainty, the majority bases its decision on a novel view of substantive Illinois law. When a valid foreclosure sale leaves a deficiency in the amount owed on the judgment, Illinois law entitles the lender to a judgment against the borrower personally for the deficiency.. Yet the majority finds (ante at 776-77) that Illinois judges have discretion to decline to award deficiency judgments against borrowers when a foreclosure sale fails to cover the total amount of the debt. As explained below in Part II-D, I believe that view of Illinois law is mistaken and will come as quite a surprise to the Illinois bar and bench.
I would be less troubled by the majority’s approach if it minimized the uncertainty by announcing a bright-line rule on the finality of foreclosure judgments. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (stressing the importance of adopting “bright-line” appellate jurisdiction rules to ensure uniformity and predictability); Kennedy v. Wright, 851 F.2d 963, 967 (7th Cir.1988) (citing Budinich and collecting cases making same point in our circuit); Exchange Nat’l Bank of Chicago v. Daniels, 763 F.2d 286, 292 (7th Cir.1985) (“The first characteristic of a good jurisdictional rule is predictability and uniform application.”). No such clear rule can be divined from the piecemeal approach adopted here. The majority opinion does not tell us what to do in a case presenting *783 only one or two of the three issues it thinks defeat finality.
Second, the different approaches to appellate jurisdiction parties in the foreclosure litigation. Let’s assume that a borrower has a good defense on the merits but loses in the trial, court. Under the majority’s approach, she cannot obtain appellate review of the judgment until after her home has been sold at auction, after the trial court has confirmed that sale, and after a buyer has deposited cash and stands ready to take possession. To preserve her right to appeal, the borrower with the good defense must ask for and obtain a stay pending appeal. See Ill. Sup.Ct. R. 305(k) (under substantive state law, non-party purchasers gain property rights that are not impaired by reversal on appeal unless the sale is stayed); Horvath v. Loesch, 87 Ill.App.3d 615, 43 Ill.Dec. 154, 410 N.E.2d 154, 158 (1980); Aurora Loan Services, Inc. v. Craddieth, 442 F.3d 1018, 1026-27 (7th Cir.2006) (under Illinois law, “in the absence of a stay, a sale of real property to a third party bars an appeal from the judgment authorizing the sale”). The possibility of such stays is enough to avoid application of the Forgay doctrine, as the majority explains, but it remains to be seen whether district courts and our court will grant such stays routinely. I hope they will, but it is not a foregone conclusion.
Third, even if we assume that the harshest effects of the majority’s approach on borrowers will be mitigated by routine stays pending appeal, I suspect the economic result will be negative for both borrowers and lenders. Consider the bidding behavior of outside buyers at auctions that take place at two different stages: (a) after the merits of the foreclosure have been settled with a final judgment and the conclusion of any appeal; or (b) while the merits of the foreclosure are still subject to appeal. Basic economic principles suggest that, all other things being equal, a buyer should be willing to pay more at stage (a) than át (b). The buyer at stage (b) may need to keep the bid open for months or even years, sharply limiting other uses of the money in the meantime. The result should be lower bid prices in auctions, to the detriment of both lenders and borrowers. See United States v. Buchman, 646 F.3d 409, 410 (7th Cir.2011) (“If buyers believe that the parcels they acquire at auction can be snatched back whenever they have made a good deal, they will pay less at foreclosure sales — and borrowers such as Buchman will be worse off as a result.”); Aurora Loan Services, 442 F.3d at 1028, citing Michael H. Schill, An Economic Analysis of Mortgagor Protection Laws, 77 Va. L.Rev. 489, 534 (1991). And where a foreclosure is set aside on the merits after a court-ordered sale, the expense and effort of the sale and its confirmation will all be for naught. I turn now to the details of the legal analysis.
I. Merits v. Execution: Finality Doctrine Under § 1291
Section 1291 provides that the “courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States.” The Supreme Court has defined a final decision in general terms as “one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Ray Haluch Gravel Co. v. Central Pension Fund of Inti Union of Operating Engineers and Participating Employers, 571 U.S-, 134 S.Ct. 773, 779, 187 L.Ed.2d 669 (2014), citing Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The judgment of foreclosure here ended this litigation on the merits and left nothing for the court to do but execute the judgjnent.
*784 Finality in a mortgage foreclosure case is best understood as a specialized application of more general rules of finality that apply in the simpler case of a suit on an unsecured debt. See In re Sorenson, 77 F.2d 166, 167 (7th Cir.1935) (making this comparison and holding that judgment foreclosing mortgage and ordering sale was “final decree” that barred bankruptcy injunction).
Pared down to the basics: Suppose P sues D for breach of a promissory note. P wins a judgment ordering D to pay X dollars to P. That judgment is final and appealable. It is final and appealable even though D may choose simply to pay the judgment, and even though, if D does not pay, P may need the court’s help to identify D’s property and then to seize and sell it to satisfy the judgment. The judgment is final even if we do not yet know exactly how the judgment will be executed. See Fed.R.Civ.P., Forms 70 & 71; JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd., 707 F.3d 853, 857, 861-62, 867-68 (7th Cir.2013) (resolving dispute about merits of claims on promissory note even though district court in post-judgment proceedings had issued later asset discovery order that was itself not immediately ap-pealable); see generally 15B Wright & Miller, Federal Practice and Procedure § 3916 (2d ed.) (discussing appellate jurisdiction over post-judgment orders).
Now suppose the promissory note is secured by collateral. The key difference is that the lender has laid the groundwork for easier, more streamlined execution of any judgment needed to collect the debt. There is no need to search out the debtor’s property. By agreement, the property securing payment has been identified in advance. By the same agreement, the lender has also been granted a priority for its claim over those of other creditors who might want to seize the same property to pay off their loans to the same borrower.
With a secured loan, the fact that the property available for execution has already been identified does not prevent the underlying judgment on the merits (“D shall pay P the sum of X Dollars”) from being final and appealable. Nor does it matter that the judgment in such cases stays execution for a limited time to give the defendant a chance to avoid the sale by making the plaintiff whole through reinstatement, redemption, or a settlement. Cf. Fed.R.Civ.P. 62(a) (staying execution of judgments for 14 days, without delaying time for appeal); Soo Line R. Co. v. Escanaba & Lake Superior R. Co., 840 F.2d 546, 550 (7th Cir.1988) (judgment awarding a specified amount of money was final even though plaintiff could not demand immediate payment and payment was contingent on arbitrator decision).
Over more than two centuries, the Supreme Court has applied these basic principles to hold judgments foreclosing mortgages and ordering the sale of the property securing the loans are final and appealable before a judicial sale and its confirmation take place. In Whiting v. Bank of United States, 38 U.S. (13 Pet.) 6, 15, 10 L.Ed. 33 (1839), a mortgage had been foreclosed and the property had been sold. Heirs of the borrower then sought to set aside both the foreclosure and the sale. Writing for the Court, Justice Story considered the question of finality and said that the issue depended on
whether the decree of foreclosure and sale is to be considered as the final decree in the sense of a Court of Equity, and the proceedings on that decree a mere mode of enforcing the rights of the creditor, and for the benefit of the debt- or; or whether the decree is to be deemed final only after the return and confirmation of the sale by a decretal order of the Court. We are of opinion that the former is the true view of the *785 matter. The original decree of foreclosure and sale was final upon the merits of the controversy.
38 U.S. at 15 (emphasis added).
The Court had applied the same rule long before Whiting, holding simply that “a decree for a sale under a mortgage, is such a final decree as may be appealed from.” Ray v. Law, 7 U.S. (3 Cranch) 179, 180, 2 L.Ed. 404 (1805). The Court has repeated the point many times since. E.g., Grant v. Phoenix Mutual Life Ins. Co., 106 U.S. 429, 431, 1 S.Ct. 414, 27 L.Ed. 237 (1882) (“[A] decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal.”); McGourkey v. Toledo & Ohio Cent. Ry. Co., 146 U.S. 536, 545, 13 S.Ct. 170, 36 L.Ed. 1079 (1892) (“[I]t is clear that a decree is final, though the case be referred to a master to execute the decree by a sale of property or otherwise, as in the case of the foreclosure of a mortgage.”).
Thus, the general rule in American law has long been that once a judgment of foreclosure and sale is entered, it is final because all that remains to be done is executing the judgment to enforce the rights and obligations that have been adjudicated.
Now it’s true that some foreclosure orders are not final and appealable, but that’s because they leave undecided questions going to the merits of the dispute. In essence, those judgments are not final because they leave the X in “D shall pay P the sum of X Dollars” undefined or subject to change.
For example, even if liability is decided, a foreclosure order is not truly final if it “leaves the amount due upon the debt to be determined, and the property to be sold ascertained and defined.” McGourkey, 146 U.S. at 545-46, 550,13 S.Ct. 170 (order not final because it directed master to determine rents, profits, and damages to railroad’s rolling stock, even though it also ordered turnover of property); see also Grant, 106 U.S. at 431 (order not final because it referred case to an auditor to “ascertain the amount due upon the debt, the amount due certain judgment and lien creditors, the existence and priorities of liens, and the claims for taxes”); North Carolina R. Co. v. .Swasey, 90 U.S. (23 Wall.) 405, 409-10, 23 L.Ed. 136 (1874) (order not final when the amount of the debt and property to be sold were not specified). So too when the order “merely determines the validity of the mortgage, and, without ordering a sale, directs the case to stand continued for further decree upon the coming in of the master’s report.” McGourkey, 146 U.S. at 545, 13 S.Ct. 170; see also Burlington, C.R. & N. Ry. Co. v. Simmons, 123 U.S. 52, 54, 8 S.Ct. 58, 31 L.Ed. 73 (1887) (order not final where validity of lien on mortgage was established but amounts due to parties had not been fixed and court expected further action before it could carry decree into effect).
If the majority’s view in this case were correct, all of these cited opinions should have been much shorter: the appeals should have been dismissed simply because the foreclosure sales had not yet been carried out and confirmed. Instead, though, the Court focused on the details of the undecided merits issues. These examples are also consistent with the more general rule that a judgment is not final where it establishes the defendant’s liability but the amount of damages remains undecided. See, e.g., Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 742, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).
These principles are so well established that case law addressing the finality problem is relatively scarce, but the available *786 cases show that these principles have been healthy until now. We applied them in United States v. Davenport, 106 F.3d 1333 (7th Cir.1997), where we held that an order of foreclosure and sale was not immediately appealable under traditional finality doctrine. The only reason for that conclusion, though, was that the district court had reserved judgment on some merits questions: whether tax fraud penalties were appropriate and whether a co-defendant would have any right to the proceeds of the sale. Id. at 1334-35. Under our reasoning in Davenport, an ordinary order of foreclosure and sale like the order here would have been final. (In Davenport, we also found we had jurisdiction under Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), for reasons not applicable here.)
We applied these same principles in In re Sorenson, 77 F.2d 166 (7th Cir.1935), where a bankruptcy court’s power to enjoin a foreclosure proceeding depended on whether a decree of foreclosure ordering a sale was a “final decree.” In reasoning directly applicable here, we held that the foreclosure decree was final:
In a foreclosure proceeding a decree which definitely fixes and adjudicates, as between the parties to the litigation, all issues relating to their mutual rights and obligations is, to all intents and purposes, a final decree. The usual decree of foreclosure does this. Those matters incident to the execution of the decree — the sale, report of sale, deficiency decree, redemption, issuance and recording of deed, and the like — are to the decree of foreclosure what at law the execution, sale, redemption, and the like are to the final judgment to which they are incidental. A decree or judgment is none the less final because of the things thereafter to be done to give it effect. ■
77 F.2d at 167 (emphasis added). We followed the same approach in Central Trust Co. of New York v. Peoria, Decatur & Evansville Ry. Co., 118 F. 30 (7th Cir. 1902), where parties appealed an order confirming a foreclosure sale. They tried in part to challenge the merits of the underlying judgment of foreclosure. We said the merits challenge came too late, treating the issue as needing neither citation nor explanation: “The question cannot be raised on objection to the sale.” Id. at 32.
We have not been alone in applying the Supreme Court precedents to find that a foreclosure order is final so long as it conclusively establishes the extent of the defendant’s liability for the defaulted loan and identifies the property to be sold. Both the Ninth and Fifth Circuits have read Ray and Whiting and the cases that followed to establish exactly this rule. See Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097,1101 (9th Cir.1998) (order meeting these conditions was final even though the judgment left “the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sale[ ]”); Citibank, N.A. v. Data Lease Financial Corp., 645 F.2d 333, 337-38 (5th Cir.1981) (order meeting these conditions had been final and therefore was unreviewable in later appeal of order confirming sale).
Under these principles and precedents, the judgment of foreclosure here is not incomplete or uncertain in any way that could defeat finality. It resolves the merits of the foreclosure dispute. It leaves nothing to do but execute the judgment by carrying out the sale and distributing the proceeds. The judgment establishes that Townsend is liable to HSBC for default under the note. It specifies the damages he must pay as a result of his default— $143,569.65 — which includes the principal balance and specified amounts of accrued prejudgment interest and attorney fees. The judgment also orders that post-judg *787 ment interest accrues at the statutory rate until the judgment is satisfied through sale of the property or through reinstatement or redemption. It also resolves the rights of all lienholders claiming an interest in the property. It fixes the priority of interests by specifying that MERS’s rights under a second mortgage are inferior to HSBC’s, and it orders that proceeds will be distributed to both HSBC and MERS . in the manner specified by 735 ILCS 5/15-1512.
The judgment also sets out the ways it can be executed. It specifies when the reinstatement and redemption periods run. In the event that Townsend would not pay the amounts needed to reinstate or redeem (and he did not), it makes clear that the judgment will be satisfied through sale of Townsend’s home. The judgment identifies the property to be sold and explains the procedures by which the sale officer (appointed by a separate order that same day) must conduct the sale. The judgment also provides that the court must enter a deficiency judgment against Townsend if “the proceeds of the sale are not sufficient to satisfy those sums due the Plaintiff.”[1]
In other words, the judgment resolves the merits of HSBC’s request for relief and can be executed mechanically following the sale. That makes it final.
The approach I would follow raises one pragmatic consideration. Illinois courts now apply the majority’s approach in foreclosure appeals, see EMC Mortgage Corp. v. Kemp, 367 Ill.Dec. 474, 982 N.E.2d 152, 154 (Ill.2012), though that has not always been true. See In re Sorenson, 77 F.2d at 168, quoting Kirby v. Runals, 140 Ill. 289, 29 N.E. 697, 698 (1892) (decree foreclosing mortgage and decreeing sale of mortgage premises is final decree even though master is ordered to make report of sale); Chicago & N.W. Ry. Co. v. City of Chi, 148 Ill. 141, 35 N.E. 881, 883 (1893), citing Whiting, 38 U.S. (13 Pet.) 6, 10 L.Ed. 33 (1839), and Grant, 106 U.S. 429, 1 S.Ct. 414 (1882).
Under either approach to finality, however, some inconsistency between federal and state courts is unavoidable. The two other states in our circuit follow the approach I would continue under the federal precedents. See Anchor Savings & Loan Ass’n v. Coyle, 148 Wis.2d 94, 435 N.W.2d 727, 729-30 (1989) (judgment of foreclosure and sale was immediately appealable despite separate need to conduct and confirm sale and compute deficiency judgment); Bahar v. Tadros, 234 Ind. 302, 123 N.E.2d 189, 189-90 (1954) (judgment of foreclosure was immediately appealable). In any event, the question of finality in federal courts is a question of federal procedural law, Budinich, 486 U.S. at 198-99, 108 S.Ct. 1717, and our job is to follow throughout the circuit what has been until now a clear rule.
II. Executing the Judgment — The Open Issues
The majority does not identify any open issue regarding the merits of the district court’s judgment. The majority focuses instead on three open issues regarding execution: (1) the mortgagor’s ability to redeem or reinstate the mortgage before the judicial sale; (2) the need to confirm any sale in a separate proceeding; and (3) the inability to determine the amounts of any deficiency judgment or interest until the fairness of the sale is evaluated.
*788 None of these matters should prevent us from treating the judgment as final. They do not threaten the decisions that Townsend is in default and that HSBC is entitled to a specified amount of compensation, whether through sale of the home or other cash payment. No matter how the majority’s issues turn out, all that can happen now is that HSBC’s judgment will be either satisfied or abandoned. I explain first some general principles regarding execution of a judgment before addressing the specific issues that trouble the majority-
A. Executing a Judgment — General Principles
The majority concludes that the merits of a foreclosure action are not resolved until the trial court finds that the mortgaged property was properly sold and the amount of a deficiency judgment is set. The majority focuses on the uncertainty as to when and exactly how HSBC will collect its judgment against Townsend. The forced sale of a home is the most dramatic part of the typical foreclosure suit, but it’s important to remember that selling the home is at bottom just one way to execute a judgment for failure to pay a debt as promised.
There is of course plenty of room for complication and controversy in executing a judgment. See, e.g., Mortgage Electronic Registration Systems, Inc. v. Estrella, 390 F.3d 522, 523 (7th Cir.2004) (recognizing that district court can invalidate foreclosure sale when it was not conducted properly). The execution process here is no exception. The judgment orders Townsend to pay HSBC $143,569.65, plus post-judgment interest. There are at least three ways Townsend could satisfy that judgment against him and make HSBC whole. First, he could just pay the money owed in cash by exercising his statutory redemption right, which amounts to a post-judgment settlement that the statute requires the creditor to accept. Second, he could exercise his statutory right of reinstatement, another form of statutory settlement that requires him to cure his defaults. Third and most likely, if Townsend cannot come up with the cash for either of the first two options, the court will execute the judgment by carrying out the sale of the mortgaged property and issuing a personal deficiency judgment for any balance still owing.
Having more than one choice for how to satisfy a judgment is commonplace.- It does not undermine the finality of that judgment. “A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order.” See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); see also Parks v. Pavkovic, 753 F.2d 1397, 1401 (7th Cir. 1985) (allowing immediate appeal when “only a ‘ministerial’ task remains for the district court to perform”).
Deciding any of the questions remaining here, which deal with exactly how Townsend and/or the court will satisfy the judgment of default against him, would not risk affecting the decision on the merits — that Townsend owes HSBC $143,569.65 plus interest and HSBC has first dibs on his home. To be sure, resolving some of these issues could affect whether Townsend needs to endure a forced sale of his home. But under the judgment of foreclosure, he can avoid the sale only if (1) he complies with the judgment by redeeming or reinstating his mortgage, (2) HSBC gives up on executing the judgment, or (3) the parties reach a private settlement.
The remaining post-judgment issues here are typical of a post-judgment proceeding that “must be viewed as a separate lawsuit, from the action which pro *789 duced the underlying judgment” and is “final ... if it disposes completely of the issues raised” in the post-judgment proceeding. In re Joint Eastern & Southern Dists. Asbestos Litig., 22 F.3d 755, 760 (7th Cir.1994) (order authorizing discovery in aid of execution of judgment not appeal-able until end of case); see also Solis v. Current Development Corp., 557 F.3d 772, 775-76 (7th Cir.2009) (order in a post-judgment proceeding is treated like an order in “a freestanding lawsuit” and is final and appealable only if it resolves all issues in that proceeding); King v. Ionization Int’l, Inc., 825 F.2d 1180, 1184 (7th Cir.1987) (post-judgment proceeding treated “as a separate lawsuit;” order in post-judgment proceeding fixing priorities of competing liens was final and appealable).
As a general rule, a losing party may appeal from a final judgment determining the merits and may appeal'separately from a later order that concludes a post-judgment proceeding to execute the underlying judgment. See Resolution Trust Corp. v. Ruggiero, 994 F.2d 1221, 1223-25 (7th Cir. 1993); EEOC v. Gurnee Inns, Inc., 956 F.2d 146, 147-48 (7th Cir.1992).
In mortgage foreclosure cases, in particular, courts have allowed separate appeals of the judgment of foreclosure and the order confirming the sale. See Leadville Coal Co. v. McCreery, 141 U.S. 475, 478-79, 12 S.Ct. 28, 35 L.Ed. 824 (1891) (“[W]e cannot fail to observe that the main scope and purpose of this appeal seem to be to relitigate questions fully determined by the final decree appealed from and affirmed.”); Citibank, N.A. v. Data Lease Financial Corp., 645 F.2d 333, 337-38 (5th Cir.1981) (explaining that separate appeals may be taken from both the order directing foreclosure and sale and the order confirming sale).
In such cases, each appeal deals with quite different issues. An appeal on the merits ■ can challenge the validity of the debt, the finding of breach, and the amount owed. A later appeal of an order confirming a sale can challenge whether the sale was actually proper. There is little threat of overlap. In fact, the Fifth Circuit requires parties to appeal separately the judgment of foreclosure and the subsequent order confirming the sale. In the Fifth Circuit, which relied on the Supreme Court cases and one Seventh Circuit decision cited above, a party who follows the majority’s course, appealing only after confirmation of a sale, is actually barred from challenging the merits of the judgment of foreclosure. See Citibank, 645 F.2d at 338; see also Central Trust Co. of New York v. Peoria, Decatur & Evansville, Ry. Co., 118 F. 30, 32 (7th Cir.1902) (appeal from order confirming sale could not challenge merits of underlying foreclosure).
This reasoning'is consistent with our decision in MERS v: Estrella, which held that an order denying confirmation to a judicial sale is not a final decision when the district court orders another sale. 390 F.3d at 523-24; see also Levin v. Baum, 513 F.2d 92, 94 (7th Cir.1975) (Stevens, J.) (order vacating prior confirmation of sale and ordering new sale was not appealable). Such an order does not end the “separate lawsuit” in the post-judgment proceeding and thus cannot be appealed immediately. But that does nothing to undermine the finality of the earlier judgment.
With these principles in mind, I turn to the specific issues that have persuaded the majority that we do not yet have a final judgment here. The specialized vocabulary of mortgage foreclosure should not distract us from the essential substance of the issues. These possible post-judgment issues pose no greater threat to finality than others that do not defeat the finality of judgments on the merits.
*790 B. Redemption and Reinstatement ■ Practice
The majority first contends the judgment here is not final because there is a chance the sale will never take place. Illinois law and the terms of this judgment allowed Townsend time to reinstate or redeem his mortgage before a sale could take place. The statutory options of reinstatement and redemption should not defeat finality. They merely spell out the terms of a post-judgment settlement the plaintiff is required to accept. By paying the amount of the judgment, the defendant avoids the sale and satisfies the judgment, just as any other losing defendant may: by paying the plaintiff the amount of the judgment.
For reinstatement, the defaulting borrower must cure the default. That requires paying all amounts due under the note (such as accrued interest, late fees, attorney fees) except the remaining principal. 735 ILCS 5/15-1602. The effect is to cure prior breaches, to make the lender whole, and to reinstate the mortgage as if the default had not occurred. Redemption, on the other hand, requires payment of all principal and interest due as of the date of the judgment (which can include the entire principal, accelerated by the default), as well as the lender’s costs and fees and interest. 5/151603(d). The effect is to make the lender whole, satisfying the note and leaving the lender with no further interest in the property. Illinois law expresses a preference for resolving mortgage disputes through redemption and reinstatement as opposed to sale. A foreclosure sale cannot occur until the time limits for both have expired. 5/15-1507(b).
These rights are far from new, so it’s hard to see why their existence should only now be discovered to change our jurisdictional calculus. We reasoned in In re Sorenson, 11 F.2d 166, 167 (7th Cir.1935), for example, that redemption was among the matters incident to the execution. The possibility of redemption did not defeat finality of a judgment of foreclosure.
Given the limited financial resources of most defaulting borrowers, these statutory rights are not exercised often. They usually serve only to delay the sale and thus the execution of the already-final judgment. See Michael H. Schill, An Economic Analysis of Mortgagor Protection Laws, 11 Va. L.Rev. 489, 496-97 (1991); George M. Platt, Deficiency Judgments in Oregon Loans Secured by Land: Growing Disparity Among Functional Equivalents, 23 Willamette L.Rev. 37, 49 (1987). As a matter of law, of course, we must allow for these possibilities in each case. Nevertheless, as far as I know, the always-present possibility that the defendant might moot an appeal by paying the amount due on the judgment has never before been deemed to destroy the finality of the underlying judgment.
The majority disagrees, relying on general language in the Supreme Court’s decision in Budinich. Ante at 775-76. But Budinich did not say that the mere prospect that a party might moot a case defeats finality of an otherwise final judgment. The Supreme Court said: “A question remaining to be decided after an order ending the litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order.” 486 U.S. at 199, 108 S.Ct. 1717. That comment is best,understood as applying to a remaining issue to be decided by the district court. The Budinich language could not extend to the prospect that a party might choose to take some action that would render moot a pending appeal or even the case itself. In virtually any civil case, a losing defendant may choose to comply with the judgment against him, or both parties may come to a post-judgment *791 settlement. Either way an appeal may become moot. But if that possibility defeated finality, we would have jurisdiction over very few civil appeals.
The statutory rights of redemption and reinstatement merely codify this commonplace option of complying with a judgment. They do not change the essential finality of the judgment of foreclosure.[2]
C. Confirmation of Sale Process
When properly understood, the need to carry out the court-ordered sale and to confirm the result under 735 ILCS 5/15-1508(b) also does not undermine finality. The sale is the key step in executing the judgment on the merits. The need for a court order confirming the sale presents an opportunity to challenge the sale itself but not the underlying foreclosure judgment. This step in the execution does not undermine the finality of the judgment of foreclosure.
As noted above, in Whiting v. Bank of United States, 38 U.S. (13 Pet.) 6, 15, 10 L.Ed. 33 (1839), the Supreme Court expressly rejected the contention that the decree (judgment) of foreclosure ordering a sale would be “deemed final only after the return and confirmation of the sale by a decretal order of the Court.” We said essentially the same thing in Sorenson, concluding that a “decree or judgment [of foreclosure] is none the less final because of the things thereafter to be done to give it effect,” and we treated “the sale, report of sale, deficiency decree” as “incident to the execution of the decree.” 77 F.2d at 167.
The Ninth and Fifth Circuits agree. See Citicorp Real Estate v. Smith, 155 F.3d 1097, 1101 (9th Cir.1998) (holding foreclosure judgment was final _ even though it left “the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sales”); Citibank, 645 F.2d at 337-38 (holding that issues relating to merits of foreclosure judgment could not be appealed after confirmation of sale because earlier order had been final).
Nothing about the Illinois confirmation of sale proceeding suggests that it has a greater impact on the merits. In Illinois, confirmation of sale proceedings are designed to determine whether the sale was fair. 735 ILCS 5/15 — 1508(b). They are initiated by a separate post-judgment motion, id., and are part of the process to satisfy the judgment of foreclosure. See 5/15 — 1508(f).
Under the Illinois statutes and case law, issues relating to the fairness of a foreclosure sale should not overlap with issues about whether it was proper to enter the judgment of foreclosure and to order the sale in the first place. After a foreclosure sale, the issue is not whether the judgment of foreclosure was correct but instead whether the sale was conducted properly. The court must “enter an order confirming the sale” unless a party establishes that the sale was invalid because “(i) a notice required in accordance with [735 ILCS 5/15 — 1507(c) ] was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice *792 was otherwise not done.” 735 ILCS 5/15— 1508(b).
The first three grounds for avoiding confirmation of a sale plainly have nothing to do with the underlying merits. Because confirmation of sale proceedings present different issues, “there will be no judicial diseconomy if they are considered in a separate appeal.” See Parks, 753 F.2d at 1402; see also Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 126, 65 S.Ct. 1475, 89 L.Ed. 569 (1945) (“[A] judgment directing immediate delivery of physical property is reviewable ... because it is independent of, and unaffected by, another litigation with which it happens to be entangled.”). In the typical case where the defendant demonstrates the sale is unfair, the remedy is simply to vacate the sale and to order a new one, not to set aside the foreclosure. See Estrella, 390 F.3d at 523-24 (remedy for unfair sale was to order second sale).
But what about the fourth ground, that “justice was otherwise not done”? That language could be read broadly to invite a judge to revisit the merits and to set aside not only the sale but also the underlying judgment of foreclosure. That prospect might weigh against finality, but both we and the Illinois Supreme Court have rejected such a broad reading of the statute.
In Aurora Loan Services, Inc. v. Craddieth, 442 F.3d 1018, 1029 (7th Cir.2006), a district court had refused to confirm a foreclosure sale, under Illinois law on exactly this broad theory. We reversed, noting “the confusion that would be injected into the law were the confirmation of foreclosure sales a matter of judicial whim.” The Illinois Supreme Court is actually the authoritative voice on this point of law, and it has explained: “At this stage of the proceedings, objections to the confirmation under section 15-1508(b)(iv) cannot be based simply on a meritorious pleading defense to the underlying foreclosure complaint.” Wells Fargo Bank, N.A. v. McCluskey, 376 Ill.Dec. 438, 999 N.E.2d 321, 328 (Ill.2013). The state court explained that “the justice provision under section 15-1508(b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles.” Id., 376 Ill.Dec. 438, 999 N.E.2d at 329 (emphasis added).
In recognizing this “rare” possibility, the Illinois court made clear that the justice provision in 15-1508(b)(iv) imposes a much more restrictive standard than the general standard for vacating default judgments under 735 ILCS 5/2-1301(e). To vacate the underlying judgment of foreclosure, it is not enough under 15-1508(b)(iv) for the defendant to “have a meritorious defense to the underlying judgment.” McCluskey, 376 IlLDec. 438, 999 N.E.2d at 329. The defendant-borrower must establish that “justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests.” Id. (emphases added).
The state court’s authoritative interpretation of the statute shows that an objection to confirmation of a sale because “justice was otherwise not done” on the merits of the suit is analogous to a motion by a losing defendant under Federal Rule of Civil Procedure 60(b). Like the justice clause in 15-1508(b)(iv), Rule 60(b)(3) permits a party facing an already final adverse judgment to ask a court to vacate that judgment for reasons of “fraud ..., misrepresentation,- or misconduct by an opposing party.”
The possibility that a defendant might seek to vacate a judgment under Rule *793 60(b) does not affect the finality of the judgment, of course. See Fed. R.App. P. 4(a)(4)(A)(vi), (B)(i); Fed.R.Civ.P. 60(c)(2); Stone v. INS, 514 U.S. 386, 401-03, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (“motions that do not toll the time for taking an appeal give rise to two separate appellate proceedings that can be consolidated”). In Illinois foreclosure cases, the “justice” clause as interpreted by the Illinois Supreme Court allows essentially the same, sort of relief from a final judgment. This method goes by a different name, but the superficial differences should not distract us from the lack of an effect on finality. For purposes of finality under 28 U.S.C. § 1291, an Illinois confirmation of sale proceeding does not affect the finality of the underlying judgment on the merits.
D. Deficiency Judgments and PreJudgment Interest
The majority’s final concern is that the amount of a deficiency judgment and the amount of interest due under the judgment have not yet been ascertained. This reasoning again confuses the underlying judgment on the merits with the details of executing that judgment.
1. Deficiency Judgments
By establishing the amounts owed and the priorities of lienholders, the judgment of foreclosure makes clear how the proceeds of sale will be divided among those with interests in the property. The judgment of foreclosure tells. the mortgagor-defendant exactly how much money he must pay the mortgagee-plaintiff to resolve the .lawsuit. Townsend is on the hook for $143,569.65, plus post-judgment interest. He owes that amount whether all the money comes from the proceeds of the sale or some also comes from payments toward a deficiency judgment. If the sale proceeds come up short of the amount owed, the judgment requires entry of a deficiency judgment against Townsend: “If the proceeds of the sale are not sufficient to satisfy those. sums due the Plaintiff, the court shall enter a Personal Deficiency Judgment pursuant to 735 ILCS 5/15-1508(e).”
The majority contends that the extent of damages owed by Townsend remains unquantified because the district court has the power to reduce the deficiency judgment Townsend owes following sale if the sale was unfair and the auction produced too low a sales price. Ante at 775-77. With respect, that argument misreads Illinois law. Some states allow such reductions, but not Illinois. See Illini Federal Savings & Loan Ass’n v. Doering, 162 Ill.App.3d 768, 114 Ill.Dec. 454, 516 N.E.2d 609, 612 (1987). Under Illinois law, the deficiency judgment must be “in an amount equal to the difference between the sale price and the debt sued upon.” Id., 114 Ill.Dec. 454, 516 N.E.2d 609 at 611. The Illini Federal court held that there was no “statutory authority for setting a deficiency judgment independent of the sale price of the property.” Id. Nor was there any “provision in Illinois case law for the court, under its equity powers, to set a deficiency judgment based on a judicial determination of value rather than the sale price of the property.” Id., 114 Ill.Dec. 454, 516 N.E.2d at 612.
An Illinois court reviewing a sale therefore lacks discretion to deny or alter the amount of the deficiency judgment if it thinks the sales price was too low. See id. (“The procedure followed by the trial court in setting aside the deficiency judgment to conduct a hearing to determine the property’s' value for purposes of setting a new deficiency amount was outside the court’s authority in supervising judicial sales.”); Bank of Benton v. Cogdill, 118 Ill.App.3d 280, 73 Ill.Dec. 871, 454 N.E.2d 1120, 1126 (1983) (“[T]he entry of such a [deficiency judgment] was mandatory ... and the *794 court lacked discretion to deny the plaintiff relief on equitable grounds.”)- Illinois law simply does not give trial courts the power the majority believes they have to exercise discretion on the amount of a deficiency judgment.
That does not mean a court is powerless if it thinks a sale was unfair. Although “mere inadequacy of price alone is not sufficient cause for setting aside a judicial sale,” a court can set aside the sale based on “mistake, fraud, or violation of duty by the officer conducting the sale.” See Mini Federal, 114 Ill.Dec. 454, 516 N.E.2d at 611; see also Resolution Trust Corp. v. Holtzman, 248 Ill.App.3d 105, 187 Ill.Dec. 827, 618 N.E.2d 418, 425 (1993) (Illinois legislature “did not intend to impose upon the court the kind of inquiry provided in the Uniform Commercial Code that all sales ‘must be commercially reasonable’ ”). But the remedy is only to order a new sale, not to deny or reduce a deficiency judgment. “[TJhere is a significant difference between the court setting aside a sale to order a new sale at a minimum price and the court setting aside a deficiency judgment to establish a new deficiency amount based on the court’s determination of value in the absence of a sale.” Mini Federal, 114 Ill.Dec. 454, 516 N.E.2d at 612.
The majority resists Mini Federal’s, prohibition on courts exercising discretion over deficiency judgments on two grounds. First, the majority argues that Mini Federal itself recognized an ability to alter deficiency judgments in the presence of “fraud or irregularity in the foreclosure proceeding.” Ante at 776-77, quoting Mini Federal, 114 Ill.Dec. 454, 516 N.E.2d at 611. But this is not so. The court in Mini Federal did not contradict itself, as the majority seems to think. Instead, as noted above, “fraud or irregularity” permit the court to consider prices other than thé price at which the property was sold but only to determine whether to deny confirmation of the sale and order a new sale, not to deny or reduce a deficiency judgment. Mini Federal itself rejected just such an attempt to stretch a court’s recognized power to refuse confirmation into a new power to deny or reduce a deficiency judgment. Id.; accord, Nationwide Advantage Mortgage Co. v. Ortiz, 363 Ill.Dec. 376, 975 N.E.2d 178, 186-87 (Ill.App.2012); NAB Bank v. LaSalle Bank, N.A., 368 Ill.Dec. 429, 984 N.E.2d 154, 161-62 (Ill.App.2013).
Second, the majority suggests that even though Mini Federal held that courts lack discretion to reduce or deny deficiency judgments, later statutory changes have undermined that holding. Closer examination shows this is not correct. Illinois recodified its mortgage law in 1987 to “integrate into one statute as much of the law of mortgage foreclosure as possible.” Steven C. Linberg & Wayne F. Bender, The Illinois Mortgage Foreclosure Law, Ill. B.J., Oct. 1987, at 800, 800. Whether a deficiency judgment is mandatory or discretionary is a rather important feature of mortgage law. None of the statutory language or case law cited by the majority suggests that Illinois has made what would be a striking change in the law.
The current statute on deficiency judgments begins with the phrase “the court shall enter a personal judgment for deficiency.” 735 ILCS 5/15-1508(e) (emphasis added). The majority nevertheless justifies its interpretation by pointing to the use of some discretionary language, like the word “may,” in the statute. This use of the word “may” is neither new nor a harbinger of the new discretionary relief the majority has found. Prior versions of the statute, including that applied in Mini Federal, also said that a plaintiff “may” obtain a deficiency judgment. See, e.g., Ill.Ann.Stat. ch. 110 ¶ 15-112 (1985) (“[I]f *795 the sale of the mortgaged premises fails to produce a sufficient amount to pay the amount found due in the judgment ... the plaintiff may have a personal deficiency judgment (emphasis added); Ill. AnmStat. ch. 95, § 17 (1950) (“[A] decree may be rendered for any balance of money that may be found due to the complainant over and above the proceeds of the sale or sales....”) (emphasis added). These uses of “may” make perfect sense even without a grant of discretion to deny or reduce a deficiency judgment. Not every foreclosure plaintiff will seek a deficiency judgment, nor will it always be necessary to enter one — after all, the property could be sold for more than the amount owed.
Even more to the point, no one else has noticed the new and dramatic change found by the majority. Following the enactment of the new statute, Illinois courts continue to cite the principles of Illini Federal favorably. See Resolution Trust, 187 Ill.Dec. 827, 618 N.E.2d at 424-25 (“Even after the 1987 amendment, courts have cited Illini Federal with approval.”). Commentators — both at the time the statute was first passed and now — have made clear that neither statute nor case law has' granted courts discretion over deficiency judgments. See Eric T. Freyfogle, The New Judicial Roles in Illinois Mortgage Foreclosures, 19 Loy. U. Chi. L.J. 933, 933, 937 (1987) (“Illinois retained the requirement of judicial foreclosure sale and refused to impose any limits on post-sale deficiency judgments.”); 2 Michael T. Madison et al., The Law of Real Estate Financing § 22:4 (“Illinois does not restrict the recovery of a deficiency judgment by statute apart from restricting a deficiency following a consensual foreclosure decree.”); id. § 12:73.
It is no surprise, then, that the majority has not found a single case where an Illinois court has recognized such discretion over a deficiency judgment. In view of today’s decision, though, we should expect some borrowers to seek such discretionary relief, albeit without any substantive guidance from our court on how trial courts should exercise this newfound discretion.
Since Illinois law actually denies trial courts discretion over deficiency judgments, all parties can expect that any deficiency judgment — whether ordered following the first attempted sale or a later sale — will equal the amount due under the judgment less the net proceeds received from the sale. We cannot know now the precise amount of any deficiency judgment, but that detail of execution does not affect finality if the amount can be mechanically calculated. A need to do arithmetic does not defeat finality. See Parks, 753 F.2d at 1401-02 (finding “ministerial” — meaning “mechanical and uncontroversial” — the need to calculate the specific amount owed to each plaintiff even when the plaintiffs later had to prove with receipts how much was owed); accord, e.g., Herzog Contracting Corp. v. McGowen Corp., 976 F.2d 1062, 1064 (7th Cir.1992) (“We think the original judgment was final, because the process of reducing it to a sum certain was indeed mechanical.”); Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1101 (9th Cir.1998) (holding foreclosure judgment was final even though it left “the actual amount of the deficiency judgment to be determined at a fair value hearing following the judicial foreclosure sales”).
2. Interest Calculations
The majority’s suggestion that “prejudgment” interest is hot yet determined is similarly flawed and just misreads the district court’s judgment. Even calling this interest “prejudgment” begs the question by assuming that the calculation of post-judgment interest begins with the sale rather than the judgment on the mer *796 its. But the face of the judgment here makes clear that the pre-judgment amount of accrued interest has already been calculated and awarded at the contract rate in. the note. The judgment then provides for post-judgment interest: HSBC is entitled to the “Total Judgment Amount as found above, together with interest at the statutory judgment rate after entry of this judgment.” ¶ 16.
The calculation of post-judgment interest is simpler and certainly does not affect finality. See Pace Communications, Inc. v. Moonlight Design, Inc., 31 F.3d 587, 591 (7th Cir.1994); cf. Student Loan Marketing Ass’n v. Lipman, 45 F.3d 173, 175-77 (7th Cir.1995) (failure to calculate prejudgment interest defeats finality). Post-judgment interest accrues at the statutory rate under 28 U.S.C. § 1961, and its calculation is a matter of arithmetic. The need to calculate both the amount of any deficiency judgment and post-judgment interest thus should not prevent the district court’s judgment of foreclosure from being a final judgment.[3]
More generally, on this issue of appellate jurisdiction, where predictability and clarity are especially prized, we should stick with the long-settled difference between a judgment on the merits and the execution of that judgment. We should exercise our jurisdiction and decide the merits.
III. Summary Judgment for HSBC
Because I believe we have jurisdiction, I turn briefly to the merits- of the appeal. Townsend argues that HSBC was not entitled to summary judgment because it failed to establish that the Illinois mortgage foreclosure statute authorized it to bring the foreclosure action. To the extent the argument is framed in terms of prudential or statutory standing, the Supreme Court clarified in Lexmark Int’l, Inc. v. Static Control Components, Inc., that whether a particular plaintiff has a cause of action under a statute no longer falls under the rubric of standing. See 572 U.S.-, 134 S.Ct. 1377, 1386-88 & n. 4, 188 L.Ed.2d 392 (2014) (finding it misleading when courts label the question whether a giyen plaintiff has a cause of action under a statute as being one of prudential or statutory standing); see also Empress Casino Joliet Corp. v. Johnston, 763 F.3d 723, 733-34 (7th Cir.2014) (following Lex-mark).
It is clear from the record that HSBC has constitutional standing, an issue that could not be waived. Townsend’s other argument — that HSBC failed to establish that the Illinois statute permits a party in its position to seek judicial relief — was waived. Townsend made no attempt during the summary judgment proceedings to show that HSBC was the wrong party to bring suit.
Even when a plaintiffs motion for summary judgment goes unopposed, a plaintiff is not entitled to summary judgment unless it establishes that there is no issue of material fact with respect to the elements it must prove and that it is therefore entitled to judgment as a matter of law. See, e.g., Hotel 71 Mezz Lender LLC v. Nat’l Retirement Fund, 778 F.3d 593, 601-02 (7th Cir.2015); Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir.1994). Under Illinois law, though, the defendant bears the burden of proving that the statute does *797 not permit the plaintiff to foreclose on the mortgage. A defendant waives the argument if it is not made prior to entry-of the judgment of foreclosure. See U.S. Bank, N.A. v. Avdic, 381 Ill.Dec. 254, 10 N.E.3d 339, 352 (Ill.App.2014) (plaintiff need not allege facts establishing that it is a party that can sue under the statute in order to win a judgment' of foreclosure); Mortgage Electronic Registration Systems, Inc. v. Barnes, 406 Ill.App.3d 1, 346 Ill.Dec. 118, 940 N.E.2d 118, 123 (2010). Townsend’s failure to raise this non-jurisdictional issue in the district court means that he waived it. See Resolution Trust Corp. v. Juergens, 965 F.2d 149, 153 (7th Cir.1992); see also C & N Corp. v. Gregory Kane & III. River Winery, Inc., 756 F.3d 1024, 1026 (7th Cir.2014) (holding that defendant can waive arguments even if they might have undermined plaintiffs prima facie case).
Accordingly, I would affirm the judgr ment of the district court. I respectfully dissent from dismissal of the appeal for lack of appellate jurisdiction.

. Beyond these doctrinal difficulties, there is also no logical connection between the time these rights expire and the time for appeal the majority has identified: after the sale is confirmed. If these rights expire before the sale — and in this case they have long since expired — why must the parties wait until the sale is confirmed before they can appeal? Why wouldn’t the judgment transform into an appealable judgment the moment these periods end? Or, given the special right to redeem for certain residential foreclosures, for 30 days after confirmation of a sale, see 735 ILCS 5/15-1604(a), when, exactly, does the judgment become final so that the time to appeal begins to run? The lack of answers to these questions highlights the uncertainty caused, by the majority’s approach to finality.

. The majority’s approach to interest also creates a new uncertainty with significant economic consequences given today’s interest rates. When does the interest 'calculation shift from the higher, pre-judgment contract rate to the lower, post-judgment statutory rate: with the judgment of foreclosure or the confirmation of sale? Which is the "entry of the judgment” under 28 U.S.C. § 1961? See generally Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990).